UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRANDON LEWIS, THE FIRING PIN, LLC,
SHANNON JOY, JAMES OSTROWSKI,
STEPHEN FELANO, DUANE WHITMER,
SETH DUCLOS, LISA REEVES, doing
business as Big Red Barber Shop,

                                    Plaintiffs

-vs-

ANDREW M. CUOMO, individually and as
Governor of New York, LETITIA JAMES,
individually and as Attorney General of the
State of New York, KEITH M. CORLETT,
individually and as Superintendent of the
New York State Police, DOUGLAS A.
RANDALL, individually and as Monroe
County pistol permit licensing officer, TODD
K. BAXTER, individually and as Sheriff of
Monroe County, JAMIE ROMEO, individually
and as Monroe County Clerk, INVESTIGATOR
CORREA, individually and as investigator
employed by the State of New York, EMPIRE
STATE DEVELOPMENT CORPORATION,

                                    Defendants

_____

DECISION and ORDER

20-CV-6316 CJS

## INTRODUCTION

Plaintiffs filed this action to challenge various aspects of the Covid-19 "lockdown" imposed in the State of New York.  Specifically, Plaintiffs maintain that the New York State Legislature's decision, in response to the Covid-19 pandemic, to hastily amend New York State Executive Law § 29-a to grant greater emergency powers to Governor Andrew Cuomo ("the Governor" or "Cuomo"), and Cuomo's subsequent issuance of various executive orders pursuant to that law, as well as his later delegation of powers to "unelected officials throughout the State," was

unlawful and violated their federal constitutional rights.  Apart from challenging the process by which Cuomo came to exercise such emergency powers, Plaintiffs also contend that Cuomo's executive orders imposed unconstitutional restrictions on their federal constitutional rights. Defendants, meanwhile, maintain that the actions taken by the legislature and Cuomo were perfectly lawful, and that the executive orders did not violate any federal constitutional provision. Now before the Court is Plaintiffs' motion for preliminary injunctive relief (ECF No. 4).  The application is denied as moot following the Legislature's revocation of Cuomo's added emergency powers and Cuomo's issuance of Executive Order 210 ending the Covid-19 state of emergency in New York and rescinding all prior executive orders relevant to this action.

BACKGROUND

On May 15, 2020, Plaintiffs commenced this action with the filing of a Complaint purporting to seek vindication of various rights guaranteed by the U.S. Constitution which, Plaintiffs contend, Defendants opportunistically violated (based on their political and philosophical opposition to those rights, especially Second Amendment rights) while ostensibly responding to the Covid-19 Pandemic.  The Complaint identifies the particular rights at issue as

> various rights, including natural rights, protected by the United States Constitution, including the right of public and religious assembly under the First Amendment, the right to keep and bear arms under the Second Amendment, the right to be free from unlawful seizures under the Fourth Amendment, the right to operate a business under the Fifth and Fourteenth Amendments, and the right secured by the Fifth, Ninth, Tenth and Fourteenth Amendments and the Guarantee Clause to be free of all restrictions unlawfully decreed by the Governor in response to the coronavirus (Covid-19) pandemic.

Compl. ¶ 1.  The Complaint alleges that Plaintiffs have no realistic opportunity to seek political or legal redress from any of the branches of New York State government due to the one-party

control of the state,[1] and purports to seek relief from this Court "pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. § 1983."

The Complaint recites that "[o]n March 2, 2020, apparently in response to the Coronavirus [outbreak], the New York State Legislature passed a bill amending Section 29-a of the Executive Law to increase the Governor's powers to deal with a broad array of emergencies." The Complaint states that Governor Cuomo, armed with these additional powers, proceeded to issue a series of executive orders limiting the operation of, and access to, institutions and establishments where people would ordinarily congregate, such as churches, synagogues, schools, places of employment, movie theaters, shopping malls, restaurants, amusement parks, bowling alleys, gun shops, barber shops and hair salons. The Complaint refers to these various restrictions collectively as "the lockdown." The Complaint notes that Cuomo further issued executive orders requiring citizens to wear face coverings in various settings. Further, the Complaint indicates that on May 11, 2020, Cuomo purported to delegate "his emergency powers to regional committees and officials, [giving them] vast discretion to continue any of his emergency decrees," thereby "unlawfully delegat[ing] the very same legislative powers that were unlawfully delegated to him."

The Complaint maintains that this entire series of events was unlawful, and, in particular, that the delegations of legislative power, first by the legislature and then by Cuomo, were "all in violation of due process and the Guarantee Clause[.]" More specifically as to this point, the Complaint states:

> 169. On March 2, 2020, the State Legislature passed a bill that gave the Governor unprecedented powers to rule by decree in vaguely defined emergency situations.

---

[1] *See*, Compl. at ¶ ¶ 212, 225 ("[P]laintiffs do not believe they could possibly obtain any redress in state courts or in the legislature due to the nature of the New York State political and legal system. . . . All of the key state elected officials are Democrats from the New York City metropolitan area.").

3

170. The law had previously given the Governor only the power to suspend statutes in such cases.

171. The statute [New York Executive Law § 29-a] improperly delegates wholesale legislat[ive] power to the Governor which was delegated by the people only to the Legislature and only under strict procedural requirements including dividing the legislative power into two separate houses, the Senate and the Assembly, and requiring their election by district every two years and by dispersing that  power among what is currently 213 legislators. NY Constitution, Article III, Section 1, et seq.; Cf., German Enabling Act of 1933 ("Laws enacted by the Reich government shall be issued by the Chancellor and announced in the Reich Gazette.")

172. The State Constitution gives all legislative power to the Legislature only.

173. Thus, the Governor has no legal authority or jurisdiction to issue directives and all such directives are null and void ab initio just as they would be if issued by any other of the other 19,440,469 other residents of New York.

174. In addition to the Governor and his agents violating other specific provisions of the Bill of Rights and Constitution, for them to impose legal obligations, legal coercion and various penalties on citizens, without the slightest hint of legal authority is a violation of due process under the 5th and 14th Amendments to the Constitution as well as the Guarantee Clause ("The United States shall guarantee to every state in this union a republican form of government." Article IV)

175. Thus, the Governor's orders closing businesses, limiting public assembly, religious gatherings, forcing people to wear masks in public, etc. are all illegal.

Compl. at ¶ ¶ 169–175.

"The complaint seeks an injunction against all of the Governor's [Covid-19] executive orders and a declaration that the statute [Executive Law § 29-a] is unconstitutional." Pls.' Mem. of Law (ECF No. 31) at p. 13.  Plaintiffs' challenge to § 29-a, however, is not limited to the context of the Covid-19 pandemic.  Rather, Plaintiffs object to the statute's grant of emergency power to the Governor in all the enumerated emergency situations, and particularly those involving "terrorism" and "cyber events."    More broadly, the Complaint contends that the Defendants,

and primarily Cuomo, with the complicity of the Democrat-controlled New York Legislature, used the Covid-19 pandemic as an "excuse" to take rights from New York's citizens. *See*, Compl. at ¶ 2 ("The Governor and the Legislature have used a serious pandemic as an excuse to revoke a long list of natural rights of the people of the State, which rights are unalienable and guaranteed by the United States Constitution.").  Indeed, the Complaint alleges that Defendants engaged in a "bloodless coup against the constitution." Compl. at ¶ 9 ("To be blunt, a bloodless coup against the constitution has been undertaken by the State itself.").

Apart from the alleged unconstitutionality of the delegation of legislative power, the Complaint contends that the various Executive Orders that Cuomo issued pursuant to that delegation (which closed businesses, forbid public gatherings and required face coverings) were themselves unconstitutional.  In that regard, the Complaint contends that the Covid-19 outbreak did not provide a sufficient justification for the executive orders,  since "[t]here is little if any solid data to show that locking down society yields a better result with respect to the virus, than merely taking precautionary measures" aimed at those most vulnerable to the illness, namely, persons who are elderly and in poor health. According to the Complaint, "[a]llowing younger and healthier people at low risk to resume normal activities and develop herd immunity while encouraging those at high risk to take precautionary measures is not only the best and most rational strategy but one that does not impinge on constitutional rights." The Complaint further asserts that "[t]here is exactly zero evidence that this lockdown is on the whole, [was] beneficial to society, to the economy or to our overall health and welfare."  To the contrary, the Complaint alleges that the lockdown has had devastating effects on society. *See*, Compl. at ¶ 191 ("The Governor's unlawful lockdown of society and the economy, mirrored in most other states by their own governors, has devastated American society and its economy.").  The Complaint asserts that

the lockdown was especially unnecessary with regard to upstate New York, which Plaintiffs contend has become "a political colony of downstate."

Alternatively, the Complaint alleges that to the extent the lockdown became truly "necessary," it was only because Cuomo and the state legislature responded incompetently to the outbreak in the first place, thereby creating a situation in which they could justify violating Plaintiffs' rights.

The Complaint maintains that Cuomo's "emergency decrees" had an injurious effect on each of the Plaintiffs.  In particular, the Complaint alleges that Brandon Lewis ("Lewis") is the owner of The Firing Pin LLC, a firearms retail shop that was deemed "nonessential" and forced to close to in-store sales (though it could make curbside sales); that Shannon Joy ("Joy") is the owner of Joy Media and the radio program "The Shannon Joy Show," and that her ability to work, attend church worship services, have her children receive public education, attend protests and avoid wearing a mask, were restricted; that James Ostrowski ("Ostrowski") was prevented from attending Roman Catholic Masses, was harassed by police during a "rally to reopen Buffalo," was prevented from exercising at the gym and was forced to wear a face mask when in public; that Seth Duclos ("Duclos") was prevented from completing his application for a firearms license due to the fact that the lockdown resulted in the temporary closure of the Monroe County Pistol Permit Office; that Stephen Felano ("Felano"), a self-described "Second Amendment Rights Advocate," was deterred from engaging in pro-Second Amendment gun rights advocacy, was prevented from engaging in firearms and marksmanship training and was forced to wear a face covering in public; that Duane Whitmer ("Whitmer"), a self-described "libertarian and Second Amendment activist and firearms owner," "candidate for Congress in the 27th District of New York as candidate of the Libertarian Party" and "Chairman of the Erie County Libertarian Party,"

6

was deterred from attending or hosting public meetings or events involving the expression of pro-Second Amendment or Libertarian views, was limited in his opportunities to purchase firearms and ammunition, and was forced to wear a face covering; and that Lisa Reeves ("Reeves"), the sole proprietor of the Big Red Barber Shop in Ithaca, New York, was forced to close her business after it was deemed non-essential.

The Complaint purports to assert eight separate causes of action under Section 1983. The First Cause of Action alleges that Defendants violated the federal constitutional rights of Lewis, The Firing Pin LLC and Duclos, under the  Second, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause, the Takings Clause and the Commerce Clause, by forcing the Firing Pin and other gun shops to close.  The Second Cause of Action alleges that Defendants violated the rights of Joy, Ostrowski, Felano and Whitmer under the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, by depriving them of their rights to assembly and free speech.  The Third Cause of Action alleges that Defendants violated the rights of Joy and Ostrowski under the First and Fourteenth Amendments, by prohibiting and/or restricting religious gatherings.  The Fourth Cause of Action alleges that Defendants violated the rights of Duclos, Lewis and the Firing Pin LLC under the Second, Fifth, Ninth, Tenth and Fourteenth Amendments, by causing the Monroe County Pistol Permit Office to close.  The Fifth Cause of Action alleges that Defendants violated the rights of Joy, Ostrowski, Felano and Whitmer under the Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments by requiring them to wear face masks in public places.  The Sixth Cause of Action alleges that Defendants violated the rights of Felano and Whitmer under the Second and Fourteenth Amendments and the Commerce Clause, by closing gun shops and thereby restricting the purchase of ammunition. The Seventh Cause of Action alleges that Defendants violated the rights of Reeves under the

Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause and the Commerce Clause, by forcing her to close her barber shop.  With regard to all seven of these claims, Plaintiffs demand money damages.

The Eighth Cause of Action purports to state a claim for declaratory and injunctive relief, on behalf of all Plaintiffs, "against Section 29-a of the [New York] Executive Law and all directives issued thereunder."  In that regard, the claim realleges violations of the First, Second, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause and the Commerce Clause, and states in pertinent part:

> [T]he Legislature's illegal delegation of power to the Governor and the combined impact of the Governor's unlawful executive orders have devastated the rights of New Yorkers, wrecked the economy and caused significant damage to each of the plaintiffs' lives, both directly and indirectly.
>
> ***
>
> The defendants' actions violated the Plaintiffs' clearly established rights to liberty and personal security and due process as guaranteed by the Constitution.
>
> ***
>
> On information and belief, the defendants ANDREW CUOMO, LETITIA JAMES and KEITH M. CORLETT support and stand ready to enforce with the powers of their offices the acts complained of herein and they should be enjoined from doing so by the Court.

Compl. at pp. 48–49.

On June 5, 2020, Plaintiffs filed the subject motion for preliminary injunctive relief (ECF No. 4), seeking an order from this Court enjoining the enforcement of the various aforementioned executive orders issued by Cuomo, namely, Executive Orders 202.6, 202.7, 202.8, 202.10, 202.11, 202.14, 202.17, 202.18, 202.31, 202.33, 202.34, 202.35 and 202.36, during the pendency of this action.  The application begins by arguing that the Guarantee Clause of the U.S. Constitution warrants the relief requested, since it guarantees a republican form of government, with separation of powers, and essentially prohibits legislative bodies from

delegating or transferring their powers to a different branch of government.  Consequently, the application contends, the New York Legislature's amendment of Executive Law § 29-a violated the Guarantee Clause:

> The people of the State of New York delegated the legislative power to the Legislature only. The Legislature's delegation to the governor of the power to issue directives exceeds that delegation and also destroyed the separation of powers and thus violates the Guarantee Clause.

ECF No. 4-4 at p. 9.  However, Plaintiffs admit that there are no cases supporting that argument, and that this is a case of first impression.

Alternatively, the application contends that Cuomo's executive orders violated "the Due Process Clause of the Fourteenth Amendment" since he lacked the "jurisdiction" to issue them. On this point, the application argues that the executive orders were not adopted in accordance with the procedural requirements for legislation contained in the New York State Constitution. Again, however, Plaintiffs admit that they can cite no case authority to support their argument. Instead, they merely state that, "in our defense, it cannot be denied that the Governor of New York has never seized totalitarian power nor locked down the state before in its 244 years of existence."

Next, the application argues that "[i]t is perfectly obvious that the Governor's orders explicitly violate[d] numerous sections of the First Amendment, particularly the ban on public and religious assemblies," since other types of assemblies [were] allowed to continue, and since "[n]o lesser restricted options were considered or applied."

Further, the application asserts that the executive orders violated the Second Amendment since they restricted Lewis's ability to operate his gun shop.

Additionally, the application contends that the executive order requiring persons to wear face coverings in public violated the Fourth Amendment, since "[t]he requirement of wearing a

mask in public is an unprecedented and massive intrusion into the security of persons and their physical integrity, dignity and health."  The application asserts that wearing face masks can be harmful to one's health, and that "[t]here is little or no evidence that mandating the wearing of masks, in contrast to encouraging people to wear masks, has been a net benefit to society."

Next, the application contends that insofar as the executive orders resulted in the closing of Lewis' and Reeves' businesses, they violated the Fourteenth Amendment since they were not narrowly tailored to achieve the Government's objective.

The application concludes by arguing that the Court should enjoin the enforcement of all of the executive orders, since they violate the Guarantee Clause and the Due Process Clause, and since an injunction would serve the public interest as the executive orders have done more harm than good.

On June 29, 2020, Defendants filed their opposition to Plaintiff's motion for injunctive relief (ECF No. 19), arguing that Plaintiffs have not met the standard for obtaining preliminary injunctive relief, since they

> cannot demonstrate a likelihood of success on the merits (let alone a "clear" or "substantial" one) because (a) Plaintiffs' claims fail [due] to lack of standing and mootness; (b) the Executive Orders were clearly "enacted to protect the public health" and have a "real or substantial relation" to a public health emergency; (c) Plaintiffs' Guarantee Clause claim is nonjusticiable; (d) the Governor's authority to issue the Orders does not violate due process; (e) the Orders do not violate the First Amendment; (f) the Orders do not violate the Second Amendment; (g) the face covering requirement does not violate the Fourth Amendment or due process; (h) The Orders do not violate Plaintiffs' right to operate a business, nor the Takings Clause. Further, given their own delays and the lack of any constitutional violation, Plaintiffs cannot show irreparable harm in the absence of injunctive relief. Finally, the balance of the equities and the public interest overwhelmingly favor New York's protection of its citizens from a global pandemic.

Defs.' Mem. of Law, ECF No. 19-4 at pp. 2–3 (footnote omitted).  Defendants maintain that the

dangers posed by Covid-19 were obviously serious, as shown by the numbers of deaths that have been reported, particularly in New York, and that the executive orders were narrowly tailored to address the spread of the illness.   Defendants further contend that other federal courts have already overwhelmingly rejected the same challenges raised by Plaintiffs here.

Regarding the standard that Plaintiffs must meet to obtain preliminary injunctive relief, Defendants contend that Plaintiffs are required to make a higher showing since they are seeking a mandatory injunction that would essentially grant them all of the relief that they are seeking in this action, but that they cannot meet the lower standard for obtaining preliminary injunctive relief in any event.  Defendants contend, in this regard, that Plaintiffs are unlikely to prevail since they lack standing, and since some of their claims are now moot;[2] that the Guarantee Clause claims are not justiciable; that the procedural Due Process claims lack merit since the Governor had authority to issue orders pursuant to his police powers; that the First Amendment free exercise of religion claims lack merit since the regulations on worship were rules of general applicability (they did not target religion) which were rationally related to stopping the spread of Covid-19; that the First Amendment free speech/assembly claims lack merit since the executive orders satisfy medium scrutiny; that the Second Amendment claims lack merit since the executive orders did not substantially burden the exercise of Second Amendment rights, as shown by the fact that guns stores were able to do business despite the orders, citizens were able to purchase ammunition at various larger retail locations, and, although the Pistol Permit Office was closed temporarily, citizens were able to buy other firearms such as long guns; that the Fourth Amendment claim aimed at face coverings lacks merit since the mask requirement was necessary to stop the spread of Covid-19, and since no "search" or "seizure" occurred and even

---

[2] As discussed further below, at the time of this writing the situation in the State of New York has changed considerably since Defendants filed their response.

if it did it was not "unreasonable" to require face coverings; and, finally, that the Due Process "taking" claim lacks merit since it is not yet ripe, inasmuch as the Government has not taken any "final" action against the Plaintiffs,  Plaintiffs have not articulated a valid property interest, and the Governmental action was not arbitrary or conscience shocking.   Defendants also maintain that Plaintiffs cannot demonstrate irreparable harm, since they were dilatory in filing both this action and the instant application for preliminary injunctive relief, and since no constitutional violation occurred in any event.

On July 1, 2020, Plaintiffs filed a reply (ECF No. 22) which, in pertinent part, argues that Plaintiffs were not dilatory in seeking relief from this Court, since the action is complicated and required lengthy preparation; that to the extent the executive orders were needed, it is because the Government's own negligence created the dangerous situation in the first place; that this Court should buck the trend of other courts and find that the Guarantee Clause claim is justiciable;  that the procedural due claim has merit since the actions taken by the governor and the legislature violated the New York State Constitution; that the Second Amendment is "the most important constitutional right" and "the courts should be EXTREMELY protective of this right," while Defendants are "known opponents of the right to bear arms," and therefore "Injunctive relief is required to protect citizens from a dictatorial Governor who has shown contempt for the Constitutional right to bear arms"; that injunctive relief is necessary even though businesses such as barber shops have been permitted to reopen, since the Governor  indicated that he could "reinstate the lockdown at any time"; and that the First Amendment free exercise claim has merit, as shown by a decision from the Northern District of New York, *Soos v. Cuomo*, 20-CV-651 (N.D.N.Y., June 26, 2020) indicating that the State of New York and City of New York may be selectively targeting houses of worship with attendance restrictions while allowing, and,

indeed, encouraging, protesters and other groups free reign to gather in even larger numbers.[3]

Defendants have also filed motions to dismiss the Complaint (ECF Nos. 20, 23, 25) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' arguments in support of these motions generally mirror those that they raise in opposition to Plaintiffs' motion for injunctive relief. Additionally, Defendants raise issues such as Eleventh Amendment immunity from money damages; absolute immunity; qualified immunity; and lack of personal involvement in the alleged constitutional violations. Plaintiffs oppose the motions to dismiss.

After the aforementioned applications were briefed and submitted, a number of events took place that affect this action, and, more particularly, Plaintiffs' application for preliminary injunctive relief. Most notably, on March 5, 2021, the New York State Legislature passed S. 5357, repealing the grant of additional emergency powers that had been granted to Governor Cuomo last year in Chapter 23 of the laws of 2020. The March 5, 2021 Act expressly referred to the "termination of certain executive powers" and "declare[d] that the governor [was] adequately equipped with his *previously existing* emergency powers and with the authorization to continue existing directive extension and modification powers to deal with the [Covid-19] situation." (emphasis added). Further, the Act stated that its intent was to "restore the pre-pandemic balance of power [between] the governor and the legislature." The Act stripped Cuomo of the ability to issue any new emergency executive orders, while allowing him to continue, and in some cases extend, the existing executive orders, subject to increased oversight by the Legislature. Governor Cuomo signed the bill into law on March 7, 2021.

---

[3] *See*, Reply (ECF No. 22) at p. 9 ("Because the State has allowed, *de facto* or *de jure*, non-religious events but restricted religious events, the regulations are not content-neutral and cannot withstand strict scrutiny.").

Then, on June 24, 2021, Cuomo issued Executive Order No. 210, effectively declaring an end to the Covid-19 state of emergency that he had declared on March 7, 2020.   The Executive Order indicated that "Executive Orders 202 through 202.111 and Executive Orders 205 through 205.3 [were] no longer necessary," and were "rescinded effective June 25, 2021."

Consequently, New York's Covid-19 state of emergency has ended, Cuomo's Covid-19-related executive orders have been permanently rescinded, and New York's Executive Law has been amended to place governor back on the same footing with regard to emergency powers that he had prior to the Pandemic.[4]

On July 23, 2021, the Court contacted the parties' counsel by email to inquire as to whether they agreed that the request for preliminary injunctive relief is now moot.  In so doing, the Court referenced the Second Circuit's recent decision in *36 Apartment Associates, LLC v. Cuomo*, 20-2565-cv, --- Fed.Appx. --- , 2021 WL 3009153 (2d Cir. Jul. 16, 2021), in which the Circuit Court found that a request for injunctive relief concerning one of Cuomo's Covid-19 executive orders was moot in light of Executive Order No. 210.  All counsel agree that the application is moot for the reasons noted by the Court.

DISCUSSION

Now before the Court are Plaintiffs' motion for preliminary injunctive relief and Defendants' cross-motions to dismiss.  Ordinarily, the Court would consider Defendants' motions first, since Plaintiffs' entitlement to injunctive relief would first require the existence of actionable claims.[5]   However, due to the change in circumstances discussed earlier, the Court

---

[4]In that regard, the Court understands that Plaintiffs' objection to the 2020 amendment to Executive Law sec 29-a was not limited to the Covid-19 context, but involved the executive's ability to issue emergency executive orders concerning other matters as well, including terrorism.  The Legislature's recent action also revokes the governor's power with regard to such matters

[5] *See, Olde Monmouth Stock Transfer Co. v. Depository Tr. & Clearing Corp.*, 485 F. Supp. 2d 387, 391 (S.D.N.Y. 2007) ("While DTC's cross-motion to dismiss Olde Monmouth's complaint was filed after Olde Monmouth moved for a preliminary injunction, I will consider it first, for the following reasons. Every federal civil case begins with the

has determined that the application for preliminary injunctive relief should be denied as moot.

In that regard,

> [u]nder the mootness doctrine, a defendant's voluntary cessation of its allegedly
> illegal activities may render a case moot if the defendant can demonstrate that
> "(1) there is no reasonable expectation that the alleged violation will recur, and
> (2) interim relief or events have completely and irrevocably eradicated the effects
> of the alleged violation." *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir.
> 1996), citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations
> and internal quotations omitted).
>
> Generally, when a lawmaker withdraws an allegedly unconstitutional law, any
> plaintiff's request for an injunction against its application becomes moot.
> *Campbell*, 80 F.3d at 706. *See also Burke* [*v. Barnes*], 479 U.S. [361,] 363-64
> [(1987)] (holding that when a challenged statute "by its own terms [becomes] a
> dead letter," the case is mooted).

*62-64 Kenyon St. Hartford, LLC v. City of Hartford*, No. 3:16-CV-00617(VAB), 2017 WL 20911,

at *4 (D. Conn. Jan. 2, 2017*); see also, Take-Two Interactive Software, Inc. v. Zipperer*, No. 18

CIV. 2608 (LLS), 2018 WL 4347796, at *10 (S.D.N.Y. Aug. 16, 2018) ("An application for an

injunction is moot where the problem sought to be remedied has ceased, and where there is

no reasonable expectation that the wrong will be repeated.") (citations and interna quotation

marks omitted).

Here, it is clear to the Court that the challenged conduct has now ceased, due to the

combined actions of the Legislature and Cuomo as set forth above.  The allegedly

unconstitutional statute and executive orders have been rescinded, for reasons having nothing

to do with this lawsuit.  Moreover, based on the facts and circumstances discussed earlier,

---

filing of a complaint. When a plaintiff moves for preliminary injunctive relief, it does so on the basis and in aid of its
previously filed complaint. The objective of a plaintiff moving for a preliminary injunction is to obtain relief
pendente lite with respect to the claims plaintiff pleads in its complaint.  Given these procedural realities, the Court
properly considers DTC's motion to dismiss Olde Monmouth's complaint before considering plaintiff's motion for a
preliminary injunction. DTC moves to dismiss the complaint under Rule 12(b)(6) on the ground that it fails to state
a claim upon which relief—any form of relief—can be granted. If DTC's motion is well founded, Olde Mountain's
complaint falls and its motion for a preliminary injunction necessarily falls with it.").

including the revocation of the Democrat Governor's expanded emergency powers by the Democrat-controlled legislature, the Court finds that there is no "reasonable expectation of a recurrence." *See, 36 Apartment Assocs., LLC v. Cuomo*,  2021 WL 3009153, at *2 ("As the Governor notes, [Executive Order]  202.28 expired on June 25, 2021, and has not been renewed. *See* Exec. Order No. 202.109, 9 N.Y.C.R.R. § 8.202.109 (2021) (extending disaster emergency through June 24, 2021); *see also* Exec. Order No. 210, 9 N.Y.C.R.R. § 8.210 (2021) (rescinding Executive Orders 202 through 202.111) . . .  The claims relating to [Executive Order] 202.28 are therefore . . .  moot, unless plaintiffs can demonstrate that they remain under a constant threat that government officials will use their power to reinstate the challenged restrictions.  [Executive Order] 202.28 was enacted as part of a statewide response to the COVID-19 crisis. We are not persuaded that the circumstances under which the security deposit provision might be reinstated are sufficiently likely to reoccur such that plaintiffs "remain under a constant threat of reinstatement.") (citations and internal quotation marks omitted).  Accordingly, Plaintiffs' application for preliminary injunctive relief is denied as moot. By separate decision and order, the Court will issue a decision on Defendants' cross-motions to dismiss the Complaint.

CONCLUSION

Plaintiffs' application for preliminary injunctive relief (ECF No. 4) is denied.

SO ORDERED.


Dated:Rochester, New York
       July 27, 2021                              ENTER:


                                         CHARLES J. SIRAGUSA
                                         United States District Judge

16