UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRANDON LEWIS, THE FIRING PIN, LLC,
SHANNON JOY, JAMES OSTROWSKI,
STEPHEN FELANO, DUANE WHITMER,
SETH DUCLOS, and LISA REEVES,
doing business as Big Red Barber Shop,

                                        Plaintiffs

                                                            DECISION and ORDER

-vs-                                                        20-CV-6316 CJS

ANDREW M. CUOMO, individually and as
Governor of New York, LETITIA JAMES,
individually and as Attorney General of the
State of New York, KEITH M. CORLETT,
individually and as Superintendent of the
New York State Police and EMPIRE
STATE DEVELOPMENT CORPORATION,

                                        Defendants
_____

INTRODUCTION

        Plaintiffs filed this action to challenge various aspects of the Covid-19 "lockdown"

imposed in the State of New York beginning in March 2020.  Specifically, Plaintiffs

maintain that the New York State Legislature's decision, in response to the Covid-19

pandemic, to hastily amend New York State Executive Law § 29-a to grant greater

emergency powers to former Governor Andrew Cuomo ("the Governor" or "Cuomo"), and

Cuomo's subsequent issuance of various executive orders pursuant to that law, as well

as his later delegation of powers to "unelected officials throughout the State," was

unlawful and violated their federal constitutional rights.  Apart from challenging the

process by which Cuomo came to exercise such emergency powers, Plaintiffs also

contend that Cuomo's executive orders imposed unconstitutional restrictions on their federal constitutional rights.  Defendants, meanwhile, maintain that the actions taken by the legislature and Cuomo were perfectly lawful, and that the executive orders did not violate any federal constitutional provision.  Plaintiff's claims are primarily against Cuomo, though they also maintain that State Attorney General Letitia James ("James"), former New York State Police Superintendent Keith Corlett ("Corlett") and the Empire State Development Corporation ("ESDC") were involved in the alleged constitutional violations.  Now before the Court are motions to dismiss by James, Corlett and ESCD. (ECF Nos. 20 & 23).[1]  For the reasons discussed below, the applications are granted.[2]

BACKGROUND

On May 15, 2020, Plaintiffs commenced this action with the filing of a Complaint purporting to seek vindication of various rights guaranteed by the U.S. Constitution which, Plaintiffs contend, Defendants opportunistically violated (based on their political and philosophical opposition to those rights, especially Second Amendment rights) while ostensibly responding to the Covid-19 Pandemic.  The Complaint identifies the particular rights at issue as

> various rights, including natural rights, protected by the United States
> Constitution, including the right of public and religious assembly under the
> First Amendment, the right to keep and bear arms under the Second
> Amendment, the right to be free from unlawful seizures under the Fourth
> Amendment, the right to operate a business under the Fifth and Fourteenth
> Amendments, and the right secured by the Fifth, Ninth, Tenth and

---

[1] The Court will address a remaining motion to dismiss by Cuomo (ECF No. 25) in a separate decision and order.

[2] On June 7, 2021, Kevin P. Bruen ("Bruen") became the Superintendent of the New York State Police, replacing defendant Keith Corlett, who retired from that position in November 2020.  Since Corlett was sued in both his individual and official capacities, he remains a defendant in his individual capacity, but pursuant to Fed. R. Civ. P. 25(d) Bruen would automatically be substituted as a party in his official capacity as Superintendent.  However, as discussed below the Court is dismissing the official capacity claims as moot, so there is no reason to add Bruen as a defendant.

Fourteenth Amendments and the Guarantee Clause to be free of all restrictions unlawfully decreed by the Governor in response to the coronavirus (Covid-19) pandemic.

Compl. ¶ 1.  The Complaint purports to seek relief from this Court "pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. § 1983."

The Complaint recites that "[o]n March 2, 2020, apparently in response to the Coronavirus [outbreak], the New York State Legislature passed a bill amending Section 29-a of the Executive Law to increase the Governor's powers to deal with a broad array of emergencies."  The Complaint maintains that this amounted to an illegitimate delegation of legislative power to Cuomo by the Legislature.  The Complaint states that Cuomo, armed with these additional powers, proceeded to issue a series of executive orders limiting the operation of, and access to, institutions and establishments where people would ordinarily congregate, such as churches, synagogues, schools, places of employment, movie theaters, shopping malls, restaurants, amusement parks, bowling alleys, gun shops, barber shops and hair salons.  The Complaint refers to these various restrictions collectively as "the lockdown."   The Complaint notes that Cuomo further issued executive orders requiring citizens to wear face coverings in various settings. Further, the Complaint indicates that on May 11, 2020, Cuomo purported to delegate "his emergency powers to regional committees and officials, [giving them] vast discretion to continue any of his emergency decrees," thereby "unlawfully delegat[ing] the very same legislative powers that were unlawfully delegated to him."

The Complaint maintains that this entire series of events was unlawful, and, in particular, that the delegations of legislative power, first by the legislature and then by Cuomo, were "all in violation of due process and the Guarantee Clause" of the U.S.

Constitution.  More specifically as to this point, the Complaint states:

169. On March 2, 2020, the State Legislature passed a bill that gave the Governor unprecedented powers to rule by decree in vaguely defined emergency situations.

170. The law had previously given the Governor only the power to suspend statutes in such cases.

171. The statute [New York Executive Law § 29-a] improperly delegates wholesale legislat[ive] power to the Governor which was delegated by the people only to the Legislature and only under strict procedural requirements including dividing the legislative power into two separate houses, the Senate and the Assembly, and requiring their election by district every two years and by dispersing that power among what is currently 213 legislators. NY Constitution, Article III, Section 1, *et seq*.; *Cf.*, German Enabling Act of 1933 ("Laws enacted by the Reich government shall be issued by the Chancellor and announced in the Reich Gazette.")

172. The State Constitution gives all legislative power to the Legislature only.

173. Thus, the Governor has no legal authority or jurisdiction to issue directives and all such directives are null and void ab initio just as they would be if issued by any other of the other 19,440,469 other residents of New York.

174. In addition to the Governor and his agents violating other specific provisions of the Bill of Rights and Constitution, for them to impose legal obligations, legal coercion and various penalties on citizens, without the slightest hint of legal authority is a violation of due process under the 5th and 14th Amendments to the Constitution as well as the Guarantee Clause ("The United States shall guarantee to every state in this union a republican form of government." Article IV)

175. Thus, the Governor's orders closing businesses, limiting public assembly, religious gatherings, forcing people to wear masks in public, etc. are all illegal.

Compl. at ¶ ¶ 169–175.

"The complaint seeks an injunction against all of the Governor's [Covid-19] executive orders and a declaration that the statute [Executive Law § 29-a] is unconstitutional." Pl. Memo of Law (ECF No. 31) at p. 13.  Plaintiff's challenge to § 29-a, however, is not limited to the context of the Covid-19 Pandemic.  Rather, Plaintiffs object to the statute's grant of power to the Governor in all the enumerated emergency situations, and particularly those involving "terrorism" and "cyber events."   More broadly, the Complaint contends that the Defendants, and primarily Cuomo, with the complicity of the Democrat-controlled New York Legislature, used the Covid-19 pandemic as an "excuse" to take rights from New York's citizens. *See*, Complaint at ¶ 2 ("The Governor and the Legislature have used a serious pandemic as an excuse to revoke a long list of natural rights of the people of the State, which rights are unalienable and guaranteed by the United States Constitution.").  Indeed, the Complaint alleges that Defendants engaged in a "bloodless coup against the constitution." Complaint at ¶ 9 ("To be blunt, a bloodless coup against the constitution has been undertaken by the State itself.").

Apart from the alleged unconstitutionality of the delegation of legislative power, the Complaint contends that the various Executive Orders that Cuomo issued pursuant to that delegation (which closed businesses, forbade public gatherings and required face coverings) were themselves unconstitutional.  In that regard, the Complaint contends that the Covid-19 outbreak did not provide a sufficient justification for the executive orders, since "[t]here is little if any solid data to show that locking down society yields a better result with respect to the virus, than merely taking precautionary measures" aimed at those most vulnerable to the illness, namely, persons who are elderly and in poor health.

According to the Complaint, "[a]llowing younger and healthier people at low risk to resume normal activities and develop herd immunity while encouraging those at high risk to take precautionary measures is not only the best and most rational strategy but one that does not impinge on constitutional rights." The Complaint further asserts that "[t]here is exactly zero evidence that this lockdown is on the whole . . .  beneficial to society, to the economy or to our overall health and welfare."  To the contrary, the Complaint alleges that the lockdown has had devastating effects on society. *See*, Complaint at ¶ 191 ("The Governor's unlawful lockdown of society and the economy, mirrored in most other states by their own governors, has devastated American society and its economy.").  The Complaint asserts that the lockdown was especially unnecessary with regard to upstate New York, which Plaintiffs contend has become "a political colony of downstate."

Alternatively, the Complaint alleges that to the extent the lockdown became truly "necessary," it was only because Cuomo and the state legislature responded incompetently to the outbreak in the first place, thereby creating a situation in which they could justify violating Plaintiffs' rights.

The Complaint maintains that Cuomo's "emergency decrees" had a constitutionally-injurious effect on each of the Plaintiffs.  In particular, the Complaint alleges that Brandon Lewis ("Lewis") is the owner of The Firing Pin LLC, a firearms retail shop that was deemed "nonessential" and forced to close to in-store sales (though it could make curbside sales); that Shannon Joy ("Joy") is the owner of Joy Media and the radio program "The Shannon Joy Show," and that her ability to work, attend church worship services, have her children receive public education, attend protests and avoid wearing a mask, were restricted; that James Ostrowski ("Ostrowski") was prevented from

attending Roman Catholic Masses, was harassed by police during a "rally to reopen Buffalo," was prevented from exercising at the gym and was forced to wear a face mask when in public; that Seth Duclos ("Duclos") attained the age of 21 during the lockdown and was prevented from completing his application for a New York State firearms license due to the fact that the lockdown resulted in the temporary closure of the Monroe County Pistol Permit Office; that Stephen Felano ("Felano"), a self-described "Second Amendment Rights Advocate," was deterred from engaging in pro-Second Amendment gun rights advocacy, was prevented from engaging in firearms and marksmanship training and was forced to wear a face covering in public; that Duane Whitmer ("Whitmer"), a self-described "libertarian and Second Amendment activist and firearms owner," "candidate for Congress in the 27th District of New York as candidate of the Libertarian Party" and "Chairman of the Erie County Libertarian Party," was deterred from attending or hosting public meetings or events involving the expression of pro-Second Amendment or Libertarian views, was limited in his opportunities to purchase firearms and ammunition, and was forced to wear a face covering; and that Lisa Reeves ("Reeves"), the sole proprietor of the Big Red Barber Shop in Ithaca, New York, was forced to close her business after it was deemed non-essential.

The Complaint purports to assert eight separate causes of action under Section 1983.   The First Cause of Action alleges that Defendants violated the federal constitutional rights of Lewis, The Firing Pin LLC and Duclos under the Second, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause, the Takings Clause and the Commerce Clause, by forcing the Firing Pin and other gun shops to close. The Second Cause of Action alleges that Defendants violated the rights of Joy, Ostrowski,

Felano and Whitmer under the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, by depriving them of their rights to assembly and free speech.  The Third Cause of Action alleges that Defendants violated the rights of Joy and Ostrowski under the First and Fourteenth Amendments, by prohibiting and/or restricting religious gatherings.  The Fourth Cause of Action alleges that Defendants violated the rights of Duclos, Lewis and the Firing Pin LLC under the Second, Fifth, Ninth, Tenth and Fourteenth Amendments, by causing the Monroe County Pistol Permit Office to close temporarily.  The Fifth Cause of Action alleges that Defendants violated the rights of Joy, Ostrowski, Felano and Whitmer under the Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments by requiring them to wear face masks in public places.  The Sixth Cause of Action alleges that Defendants violated the rights of Felano and Whitmer under the Second and Fourteenth Amendments and the Commerce Clause, by closing gun shops and thereby restricting the purchase of ammunition.  The Seventh Cause of Action alleges that Defendants violated the rights of Reeves under the Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause and the Commerce Clause, by forcing her to close her barber shop.  With regard to all seven of these claims, Plaintiffs demand money damages.

The Eighth Cause of Action purports to state a claim for declaratory and injunctive relief, on behalf of all Plaintiffs, "against Section 29-a of the [New York] Executive Law and all directives issued thereunder."  In that regard, the claim realleges violations of the First, Second, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause and the Commerce Clause, and states in pertinent part:

> [T]he Legislature's illegal delegation of power to the Governor and the combined impact of the Governor's unlawful executive orders have

devastated the rights of New Yorkers, wrecked the economy and caused significant damage to each of the plaintiffs' lives, both directly and indirectly.

*****

The defendants' actions violated the Plaintiffs' clearly established rights to liberty and personal security and due process as guaranteed by the Constitution.

*****

On information and belief, the defendants ANDREW CUOMO, LETITIA JAMES and KEITH M. CORLETT support and stand ready to enforce with the powers of their offices the acts complained of herein and they should be enjoined from doing so by the Court.

Compl. at pp. 48–49.

These causes of action are directed primarily at Cuomo.  However, all eight causes of action are also purportedly asserted against James and Corlett.  (Although, the fourth and sixth causes of action contain no factual allegations against James or Corlett.)  The Complaint does not allege that James or Corlett was involved in the issuance or enforcement of Cuomo's Executive Orders.  Rather, similar to the allegation set forth in the preceding paragraph, the Complaint baldly asserts, with regard to the various causes of action, that James and Corlett "support and stand ready to enforce [Cuomo's executive orders] with the powers of their offices the acts complained of herein."[3]

The Complaint purports to assert just one cause of action, the First Cause of Action, against ESDC.  With regard to this claim, ESDC is mentioned in only three paragraphs of the 50-page Complaint:  Paragraphs 36, 88 and 89.[4] Paragraph 36 alleges that Executive Order 202.6 delegated to ESDC the authority to determine what were

---

[3] The allegations in the Complaint referring to James and Corlett are in paragraphs 177–186, 243, 250, 261, 274, 289 and 296.

[4] ESDC is also mentioned in paragraph 53, but that allegation does not pertain to the First Cause of Action.  Rather, ¶ 53 asserts that Paragraph 53 alleges that ESDC issued "guidance" regarding Executive Order 202.10, indicating that "congregate services within houses of worship are prohibited."

"essential services."   Paragraph 88 alleges that Lewis requested that ESDC grant The Firing Pin "status as an essential business," but that ESDC "ignored" the request.  Finally, paragraph 89 alleges, apparently with regard to ESDC, that Cuomo's "second hand delegation of legislative powers to a public authority is obviously unconstitutional."

On June 29, 2020 and July 3, 2020, respectively, James and Corbett and ESCD ("Movants") filed the subject motions to dismiss the Complaint (ECF Nos. 20 & 23) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  James and Corlett contend that the Complaint should be dismissed under Rule 12(b)(1) since, *inter alia*, the claims for injunctive and declaratory relief are moot, the claims under the Guarantee Clause are non-justiciable and the claims seeking damages against Defendants in their official capacities are barred by the Eleventh Amendment.  James and Corlett further indicate that the Complaint should be dismissed against them under Rule 12(b)(6) because, *inter alia*, it fails to allege that they were personally involved in the alleged constitutional violations.  ESDC moves for dismissal for essentially the same reasons.

After the aforementioned applications were briefed and submitted, a number of events took place that affect this action.  Beginning on March 5, 2021, the New York State Legislature passed S. 5357, repealing the grant of additional emergency powers that had been granted to Cuomo in Chapter 23 of the laws of 2020.  The Act stripped Cuomo of the ability to issue any new emergency executive orders, while allowing him to continue, and in some cases extend, the existing executive orders, subject to increased oversight by the Legislature.  Cuomo signed the bill into law on March 7, 2021.  The Act expressly referred to the "termination of certain executive powers" and "declare[d] that the governor

[was] adequately equipped with his *previously existing* emergency powers and with the authorization to continue existing directive extension and modification powers to deal with the [Covid-19] situation." (emphasis added).  Further, the Act stated that its intent was to "restore the pre-pandemic balance of power [between] the governor and the legislature."

On June 24, 2021, Cuomo issued Executive Order No. 210, effectively declaring an end to the Covid-19 state of emergency that he had declared on March 7, 2020.   The Executive Order indicated that "Executive Orders 202 through 202.111 and Executive Orders 205 through 205.3 [were] no longer necessary," and were "rescinded effective June 25, 2021."

And, finally, effective August 24, 2021, Cuomo resigned as Governor of New York in the wake of allegations of misconduct, which led to widespread calls for his resignation and threats of impeachment by the New York Legislature.

In sum, since the filing of this action and the briefing of the motions to dismiss, New York's Covid-19 state of emergency ended, Cuomo's Covid-19-related executive orders were permanently rescinded, New York's Executive Law was amended to place New York governors back on the same footing with regard to emergency powers that existed prior to the Pandemic, and Cuomo resigned from office.  Against this backdrop the Court will consider the subject motions to dismiss the Complaint.

DISCUSSION

Section 1983

Plaintiffs bring this action pursuant to 42 U.S.C.  § 1983, which "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181

(W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).

<u>Motions Under Fed. R. Civ. P. 12(b)(1)</u>

A motion under Rule 12(b)(1) asserts the defense of "lack of subject-matter jurisdiction." Here, movants assert the following arguments under this rule: 1) any claims for money damages against the Defendants in their official capacities are barred by the Eleventh Amendment; 2) the claims for declaratory and injunctive relief (Eighth Cause of Action) must be dismissed for lack of standing or mootness; and 3) the Guarantee Clause claims are non-justiciable political questions. [5]  The Court will consider each of these arguments in turn.

*Eleventh Amendment*

James and Corlett contend that Plaintiffs cannot recover money damages against them in their official capacities, and ESDC maintains that it cannot be sued since it is an arm of the state.  Plaintiffs have not specifically disputed either assertion, and, in particular, have not disputed that ESDC is an arm of New York State for purposes of Eleventh Amendment sovereign immunity.  Eleventh Amendment sovereign immunity

---

[5] *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("The Eleventh Amendment presents a jurisdictional bar that deprives federal courts of the power to hear certain claims."); *but see, Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 (2d Cir. 2020) ("Whether Eleventh Amendment immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense has not yet been decided by the Supreme Court or this Court."), cert. denied, 141 S. Ct. 1070, 208 L. Ed. 2d 532 (2021), reh'g denied, 141 S. Ct. 1530, 209 L. Ed. 2d 262 (2021).

protects states and arms of the state from being sued. *See, Caruso v. Zugibe*, 646 F. App'x 101, 104 (2d Cir. 2016) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state.") (citation omitted).  The Eleventh Amendment similarly divests the Court of subject matter jurisdiction over any claims for money damages against a state official acting in his or her official capacity unless the state has consented to the suit or waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).  Because there has been no waiver of immunity or consent to suit in this case, any claims against ESDC, and any claims for money damages against James and Corlett in their official capacities, are dismissed with prejudice.[6]

*Standing and Mootness*

---

[6] Since Plaintiffs have not challenged ESDC's assertion that it is an arm of the state, or otherwise specifically opposed ESDC's motion for dismissal based on Eleventh Amendment immunity, the Court views Plaintiffs as having abandoned the claim against ESDC.  As discussed further below, a court cannot grant a motion to dismiss merely because it is unopposed, but where the non-movant has only partially opposed the motion the court can treat the claims which were not addressed as having been abandoned.  Consequently, the Court need not decide whether ESDC is, in fact, an arm of New York State for purposes of the Eleventh Amendment, a point on which there is some disagreement. *Compare, Bill & Ted's Riviera, Inc. v. Cuomo*, 494 F. Supp. 3d 238, 251 (N.D.N.Y. 2020) ("Unlike the New York State Liquor Authority, Defendant Empire State Development Corporation is not a state agency.") with *Constantine v. Empire State Dev.*, No. 12-CV-0509, 2013 WL 5295720, at *3 (E.D.N.Y. Sept. 18, 2013) ("There is no dispute that the DED[, which does business as the ESDC,] is an arm of the state.").  In any event, the Court alternatively finds below that the Complaint also fails to state an actionable Section 1983 claim against ESDC.  Because of this, the Court need not decide whether ESDC is entitled to Eleventh Amendment immunity from claims for money damages. *See, Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 488, 496 (N.D.N.Y. 2020) (Declining to decide whether ESD is protected by sovereign immunity, stating: "The parties dispute the nature of Defendant ESD[C. . . .  However, t]he Court can sidestep the sovereign immunity issue because, "[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, ... it is not coextensive with the limitations on judicial power in Article III." *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998).  . . .  Thus, the Court is not required to resolve the sovereign immunity issue prior to turning to the merits of the parties' motions, unlike, say, standing, mootness, or other issues that bear on the Court's subject matter jurisdiction.").
[6] ESDC Mem. of Law (ECF No. 23-1) at p. 8

With regard to Plaintiff's claims for injunctive and declaratory relief (Eighth Cause of Action), Movants contend that Plaintiffs lack standing, or that the claims are now moot, since the lockdown has been lifted.  Indeed, not only has the lockdown been lifted, but the Legislature has amended Executive Law § 29-a and all of the challenged executive orders have been rescinded.

The legal principles concerning the jurisdictional requirements relating to standing and mootness are well settled:

> Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to "Cases" and "Controversies." *E.g., Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019). The standing doctrine, which emerges from Article III, is designed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, ––– U.S. ––––, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). The doctrine imposes three requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*.

*SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020).

> The case-or-controversy limitation on our jurisdiction, and its focus on parties' stakes in the action, manifests in three distinct legal inquiries: standing, mootness, and ripeness. Only the first two are at issue here. "[S]tanding doctrine evaluates a litigant's personal stake as of the outset of litigation." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) (quoting *Cook v. Colgate*, 992 F.2d 17, 19 (2d Cir. 1993) ); see also Lujan, 504 U.S. at 569 n.4, 112 S.Ct. 2130; *Gollust v. Mendell*, 501 U.S. 115, 124, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (discussing Section 16(b) statutory standing as "limited only by conditions existing at the time an action is begun"). Mootness doctrine determines what to do "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation" after its initiation. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013) (internal quotation marks omitted); *see also United States v. Sanchez-Gomez*, ––– U.S. ––––, 138 S.Ct. 1532, 1537, 200 L.Ed.2d 792 (2018).

14

*Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018).

> A case becomes moot pursuant to Article III's Case or Controversy Clause when it is impossible for a court to grant any effectual relief whatever to the prevailing party. Accordingly, as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*United States v. Young*, 998 F.3d 43, 50–51 (2d Cir. 2021) (citations and internal quotation marks omitted).

An action seeking declaratory and/or injunctive relief against an allegedly unconstitutional statute becomes moot if the statute is repealed. *See, Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc*., 404 U.S. 412, 414–15, 92 S. Ct. 574, 575–76, 30 L. Ed. 2d 567 (1972) ("The only relief sought in the complaint was a declaratory judgment that the now repealed Fla.Stat. s 192.06(4) is unconstitutional as applied to a church parking lot used for commercial purposes and an injunction against its application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."); *see also, Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59, 61 (2d Cir. 1992) (Claim for declaratory and injunctive relief involving challenge to New York State regulation became moot when State suspended the regulation: "Constitutional challenges to statutes are routinely found moot when a statute is amended.").

The repeal of a challenged statute does not, however, moot a plaintiff's claim for money damages. *See, Marin v. Town of Se.*, 136 F. Supp. 3d 548, 562 (S.D.N.Y. 2015) ("[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *see also Van Wie v. Pataki*, 267 F.3d 109, 115 n. 4 (2d Cir.2001) (noting that a claim for damages, even nominal in nature, prevents mootness); *Stokes v. Village of Wurtsboro*,

15

818 F.2d 4, 6 (2d Cir.1987) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." (internal quotation marks omitted)); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d at 61 ("Although appellants' claims for declaratory and injunctive relief are moot, their claims for damages under 42 U.S.C. § 1983 as a result of the minority program's past operation remain viable.").

Here, although movants refer to both standing and mootness, they are not alleging that Plaintiffs lacked a personal stake in the outcome of the action at its commencement. Rather, they contend that intervening circumstances – the repeal of the statute, the lifting of the lockdown, etc. – have rendered Plaintiffs' claims moot.  The Court agrees that based on the facts set forth above, Plaintiffs' demand for declaratory and injunctive relief is moot.  In that regard, the Complaint's Eighth Cause of Action demands "injunctive and declaratory relief against Section 29-a of the Executive Law and all directives issued thereunder."  Plaintiffs had standing to pursue such a claim at the outset of the litigation. However, Section 29-a has now been amended to revoke the additional emergency powers that were granted to the Governor at the start of the Covid-19 pandemic, and the challenged Covid-19-related executive orders have all been rescinded.  For these reasons, it is not reasonably likely that the challenged actions will be reinstated.  On this point, in a different case the Second Circuit recently stated:

> As the Governor notes, [Executive Order] 202.28 expired on June 25, 2021, and has not been renewed. *See* Exec. Order No. 202.109, 9 N.Y.C.R.R. § 8.202.109 (2021) (extending disaster emergency through June 24, 2021); *see also* Exec. Order No. 210, 9 N.Y.C.R.R. § 8.210 (2021) (rescinding Executive Orders 202 through 202.111)  . . .  The claims relating to [Executive Order] 202.28 are therefore . . .  moot, unless plaintiffs can demonstrate that they remain under a constant threat that government

16

> officials will use their power to reinstate the challenged restrictions.
> [Executive Order] 202.28 were enacted as part of a statewide response to
> the COVID-19 crisis. We are not persuaded that the circumstances under
> which the security deposit provision might be reinstated are sufficiently likely
> to reoccur such that plaintiffs "remain under a constant threat of
> reinstatement.

*36 Apartment Assocs., LLC v. Cuomo*,  2021 WL 3009153, at *2") (citations and internal

quotation marks omitted); *see also, Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV,

2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021) ("There is no reasonable prospect that

the Governor's rescinded order will be revived, especially since the New York State

legislature curtailed the Governor's emergency powers to reissue COVID-19 restrictions.

Nor have we been pointed to any ongoing harm from or lingering effect of the challenged

order.") (citations and internal quotation marks omitted).  Consequently, the Court finds

that Plaintiffs' demands for injunctive and declaratory relief, including the Eighth Cause

of Action seeking injunctive and declaratory relief, are moot and must be dismissed.

### *Justiciability/Political Question Doctrine*

Movants also maintain that Plaintiffs' "Guarantee Clause" claims, in which Plaintiffs

contend that the delegation of legislative power to and by Cuomo deprived them of a

republican form of government, must be dismissed for lack of jurisdiction because they

raise a non-justiciable political question.  "The political question doctrine is more properly

characterized as a 'justiciability' question than as a question of subject matter jurisdiction.

Nevertheless, it is properly raised on a motion under Rule 12(b)(1)." *Tarros S.p.A. v.*

*United States*, 982 F. Supp. 2d 325, 330 (S.D.N.Y. 2013)

> "[T]he political question doctrine is a function of the constitutional framework
> of separation of powers. Although prudential considerations may inform a
> court's justiciability analysis, the political question doctrine is essentially a
> constitutional limitation on the courts.... [W]here adjudication would force

17

the court to resolve political questions, the proper course for the courts is to dismiss." *767 Third Avenue Associates v. Consulate General of Socialist Federal Republic of Yugoslavia*, 218 F.3d 152, 164 (2d Cir.2000) (quotation marks and citations omitted).

*Romeu v. Cohen*, 121 F. Supp. 2d 264, 274 (S.D.N.Y. 2000), aff'd, 265 F.3d 118 (2d Cir. 2001).

The U.S. Supreme Court and other courts have typically found that "guarantee clause" challenges to state action involve non-justiciable political questions. *See, Futia v. Westchester Cty. Bd. of Legislators*, No. 20 CV 1237 (VB), 2020 WL 4570494, at *6 (S.D.N.Y. Aug. 6, 2020),  ("Challenges to state action premised on violations of the Guarantee Clause traditionally present nonjusticiable political questions."), *aff'd*, 852 F. App'x 30 (2d Cir. 2021); *see also*, *Schulz v. New York State Exec., Pataki*, 960 F. Supp. 568, 575–76 (N.D.N.Y. 1997) ("The Court can find few cases where the Guarantee Clause has been invoked to invalidate the actions of a state itself. On the contrary, when the Guarantee Clause is invoked, it is invariably done so in an effort to challenge an action of the federal government.  In light of the Guarantee Clauses' implicit protection of state governmental processes from the tyranny of an all-powerful federal sovereign, it would seem imprudent on the part of the federal judiciary to allow the Clause to be used to challenge a state's own lawmaking."), *aff'd sub nom. Schulz v. New York State Exec.*, 162 F.3d 1148 (2d Cir. 1998); *Senate of Com. of Puerto Rico ex rel. McClintock v. Acevedo Vila*, 2015 WL 2671043 at *2 (D.P.R. Oct. 19, 2005) ("Federal courts have consistently concluded that the Guarantee Clause does not require states to adopt a specific formula for the separation and sharing of powers among branches of their government, and that separation-of-powers disputes are therefore non-justiciable.") (collecting cases).

18

Plaintiffs oppose the dismissal of their Guarantee Clause claims, which arguably are the centerpiece of their Complaint. Plaintiffs, though, do not really attempt to demonstrate, based on contrary legal authority, that Defendants' argument concerning justiciability is incorrect. Rather, Plaintiffs merely urge the Court to reject the non-justiciability argument since "[t]here are no cases concerning the Guarantee Clause that remotely resemble these facts." Pl. Memo of Law (ECF No. 31) at pp. 22-23. Indeed, Plaintiffs contend that "it is time to dust off the Guarantee Clause and enforce it," since it "has been largely ignored for 200 years."[7]

The Court, though, declines to find that this is one of the rare cases in which a Guarantee Clause claim might be justiciable,[8] and finds instead that the Guarantee Clause claims should be dismissed under Rule 12(b)(1) as raising a non-justiciable political question, namely, whether the New York State Legislature had the authority to delegate emergency powers to Cuomo. *See, Futia v. Westchester Cty. Bd. of Legislators*, 852 F. App'x 30, 32 (2d Cir. 2021) ("The district court . . . did not err in dismissing plaintiffs' Guarantee Clause claim for lack of subject matter jurisdiction because the claim presents nonjusticiable political questions, such as local government budget allocation.") (citation

---

[7] ECF No. 31 at pp. 20–21.

[8] The Court understands that Guarantee Clause claims may be justiciable in certain rare circumstances. *See*, Thomas C. Berg, The Guarantee of Republican Government: Proposals for Judicial Review, 54 U. Chi. L. Rev. 208 (1987) ("The Supreme Court generally has held that only Congress and the President, and not the federal judiciary, can enforce that guarantee—on the ground that all issues under the guarantee clause raise nonjusticiable 'political questions.'") (footnote collecting cases omitted). However, some courts have emphasized that guarantee clause claims are not necessarily non-justiciable. *See, Democratic Party of Wisconsin v. Vos*, 966 F.3d 581, 589 (7th Cir. 2020) ("We do not interpret [any] decision by the Supreme Court as having categorically foreclosed all Guarantee Clause claims as nonjusticiable, even though no such claim has yet survived Supreme Court review. The district court thus went too far in saying that no Guarantee Clause claim could proceed to adjudication on the merits."); *see also, Kerpen v. Metro. Washington Airports Auth.*, 907 F.3d 152, 163 (4th Cir. 2018) ("For the most part, claims premised on the Guarantee Clause present nonjusticiable 'political questions,' unfit for resolution within the judicial branch. But 'not all' claims under the Guarantee Clause are nonjusticiable. The question of whether a claim is justiciable is a 'difficult' one. Where the merits of the claim itself are easily resolved, the Supreme Court has bypassed the justiciability question entirely.") (citations omitted).

omitted).

In sum, movants' motions to dismiss under Rule 12(b)(1) are granted to the extent that any claims for money damages claims against James and Corlett in their official capacities, and any damages claim against ESDC, are dismissed as barred by the Eighth Amendment; the Eighth Cause of Action for declaratory and injunctive relief is dismissed as moot; and the Guarantee Clause claims are dismissed as raising a non-justiciable political question.

<u>Motions Under Fed. R. Civ. P. 12(b)(6)</u>

Movants alternatively seek dismissal under Rule 12(b)(6).  The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his

claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

*Motion by Attorney General James and former Superintendent Corlett*

Defendants James and Corlett maintain, *inter alia*, that the Complaint fails to plausibly plead that they were personally involved in the alleged constitutional violations. As already discussed, the Complaint demands prospective and injunctive relief against James and Corlett, as well as money damages.   However, the Court has already dismissed all claims seeking prospective and injunctive relief and all official-capacity damages claims, leaving only the claims for money damages against James and Corlett in their individual capacities. [9]

---

[9] "While a sufficiently close connection between a defendant and enforcement of a government act or

To establish liability for money damages under § 1983 a plaintiff must demonstrate each defendant's personal involvement in the alleged constitutional violation:

> A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority. Rather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Because vicarious liability is inapplicable to § 1983 suits, [the plaintiff] must raise a genuine dispute as to whether each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016) (citations and internal quotation marks omitted).

> [T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.  The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary.  The violation must be established against the supervisory official directly.

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citations and internal quotation marks omitted).

James and Corlett contend that the Complaint fails to allege their personal involvement in the alleged constitutional violations, stating:

> It is undisputed that [James and Corlett] did not issue the Executive Orders. Plaintiffs allege only that [James and Corlett] "support and stand ready to enforce the Executive Orders with the powers of their offices." Compl. at ¶¶ 178–80, 243, 250, 261, 274, 289, & 296.
>
> ***

---

policy under *Ex parte Young* is required, 'personal involvement' is not. A defendant's 'personal involvement' in an alleged constitutional deprivation is a prerequisite for a damages action under Section 1983. However, district courts in this Circuit have held that the personal involvement requirement does not apply to bar actions pursuant to § 1983 for injunctive relief against a state official." *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (citations and internal quotation marks omitted).

> Plaintiffs have not alleged facts that show that Attorney General James and Superintendent Corlett were personally involved in any unconstitutional conduct. Merely being ready to enforce the law is not sufficient to find personal involvement in an alleged constitutional wrongdoing.

ECF No. 20-1 at pp. 7, 8.

The Court agrees.  As discussed above, Plaintiffs allege that they suffered a variety of constitutional violations resulting from Cuomo's executive orders.  However, the Complaint does not allege that either James or Corlett (or anyone else) actually enforced those orders against the Plaintiffs.  Indeed, Plaintiffs apparently complied with the executive orders, which created no occasion for James or Corlett to take any enforcement action against them.

Instead, the Complaint merely alleges that, "On information and belief, the defendants LETITIA JAMES and KEITH M. CORLETT support and stand ready to enforce with the powers of their offices the acts complained of herein and they should be enjoined from doing so by the Court."[10]  Such allegation does not indicate that James or Corlett did anything to Plaintiffs.  Rather, such allegation seems to ask the Court only to enjoin James and Corlett from enforcing the executive orders at some future point, should they try to do so.  However, the executive orders have been rescinded and any claims for prospective and injunctive relief have been dismissed as moot.  The remaining claims are for money damages for actual constitutional violations that were committed, and the Complaint does not plausibly allege that James or Corlett committed any such violation against the Plaintiffs.

---

[10] Compl. at ¶ 243.

The fact that James and Corlett may have been in positions to enforce the executive orders does not amount to personal involvement in the alleged constitutional violations which Plaintiffs claim to have suffered. *See, Morabito v. New York*, 803 F. App'x 463, 466 (2d Cir.) ("[T]he Morabitos failed to allege any personal involvement of [NYS DEC Commissioner] Seggos in their alleged constitutional deprivation. . . . The Morabitos did not make any allegations that Seggos had any personal involvement in the creation or enforcement of the operative regulation."), as amended (Feb. 27, 2020), *cert. denied*, 141 S. Ct. 244, 208 L. Ed. 2d 20 (2020), *reh'g denied*, 141 S. Ct. 886, 208 L. Ed. 2d 446 (2020); *see also, Santucci v. Levine*, No. 17-CV-10204 (NSR), 2019 WL 3742286, at *8 (S.D.N.Y. Aug. 8, 2019) ("Aside from a stray assertion that Defendant Hay had "plenary discretionary authority for inter alia the enforcement of the Town's Code" (id. ¶ 9), the AC does not explain how he was personally involved, if at all, in any of the alleged zoning decisions.").

Plaintiffs nevertheless insist that in addition to the allegations about James and Corlett "supporting and standing ready to enforce" the executive orders, the Complaint contains numerous additional allegations "which are common to all defendants," including James and Corlett, that indicate personal involvement.[11]   However, the Court disagrees that there are any such allegations relating to James or Corlett.  Rather, the paragraphs of the Complaint which Plaintiffs cite are conclusory, not factual, and do not plausibly allege personal involvement by James or Corlett. *See, Liner v. Fischer*, No. 11 CIV. 6711 PAC JLC, 2013 WL 4405539, at *2 (S.D.N.Y. Aug. 7, 2013) ("Conclusory allegations of a defendant's role in the creation and enforcement of unconstitutional policies cannot

---

[11] *See*, Pl. Mem. of Law (ECF No. 31) at p. 36, referring to Complaint at ¶ ¶ 187, 188, 190, 239–244, 246–251, 255, 257, 259–268, 270–275, 285–290, 292–297.

sustain a claim of personal involvement.") (collecting cases).

Moreover, "[a] plaintiff cannot lump all the defendants together in each claim and provide no factual basis to distinguish their conduct.  Rather, a plaintiff must plead each defendant's personal involvement in an alleged constitutional violation." *Allah v. Lamanna*, No. 18 CV 8644 (VB), 2020 WL 1989418, at *3 (S.D.N.Y. Apr. 27, 2020) (citation and internal quotation marks omitted); *see also, Johnson v. City of New York*, No. 1:15-CV-8195-GHW, 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017)  ("As a corollary to the personal-involvement rule, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.") (citation and internal quotation marks omitted).  The paragraphs of the Complaint to which Plaintiffs refer do not satisfy this requirement.

Plaintiffs alternatively argue that the Court may take "judicial notice" that James was personally involved in enforcing Cuomo's executive orders against persons who are not parties to this action.  Specifically, Plaintiffs assert that James was involved "in enforcing these illegal [executive] orders against the law firm of Hogan Willig," a Buffalo-area law firm. Pl. Mem. of Law, ECF No. 31 at pp. 36–37.  In support of this argument, Plaintiffs' counsel has submitted his own affirmation (ECF No. 31-1) describing a lawsuit that Hogan Willig filed against James and Cuomo, complaining about interactions between Hogan Willig and members of James' staff in the Attorney General's Office, relating to Hogan Willig's operations during the Covid-19 lockdown.  According to counsel's affirmation, the lawsuit by Hogan Willig clearly shows that James had "hands-on involvement in enforcing the Governors' orders."   However, there are a number of problems with Plaintiffs' argument.  To begin with, counsel's affirmation may not be

considered on a Rule 12(b)(6) motion since it is outside the pleadings and is not a document of which the Court may take judicial notice.  Beyond that, the information contained therein, in addition to being hearsay, is not relevant since Hogan Willig is not a party to this action, and even assuming *arguendo* that James committed a constitutional tort against Hogan Willig, such fact would not establish a plausible claim against James in this action.  Moreover, the information taken from the lawsuit by Hogan Willig does not allege "hands-on involvement" by James, contrary to what counsel alleges, but, instead, shows personal involvement by James' subordinates.[12]  Consequently, the affirmation is of no assistance to Plaintiffs in opposing the motion to dismiss by James and Corlett.

For the reasons just discussed the Court finds that the Complaint fails to state a claim against James or Corlett in their individual capacities for money damages, and, therefore, the Court does not address the numerous additional arguments that James and Corlett have raised in support of their motion to dismiss.  The Complaint is dismissed as against James and Corlett.

### Motion by Empire State Development Corporation

ESDC is sued exclusively under the First Cause of Action,[13] relating to alleged violations of Second Amendment rights belonging to Plaintiffs Brandon Lewis, the Firing Pin and Seth Duclos.[14]  The First Cause of Action itself does not mention ESDC, except

---

[12] *See*, Hogan Willig Complaint at ¶ 217 ("Here, following the exchange of emails and phone calls with Defendant James *via AAG Foshee,* Defendant James ordered HoganWillig to cease all or most of its operations.") (emphasis added).  Additionally, the Hogan Willig Complaint sues James only in her official capacity for declaratory and injunctive relief, not money damages.  *See*, 1:20-CV-0577-JLS (W.D.N.Y.), ECF No. 1.  As mentioned in footnote 5 above, a defendant's personal involvement is not required to obtain such relief, though it is required to obtain money damages.

[13] ESDC asserted this, Plaintiffs did not deny it, and, in any event, the Court agrees with ESDC.

[14] ESDC contends that while the First Cause of Action makes passing reference to various constitutional amendments, it is really a Second Amendment claim. *See*, ESD Mem. of Law (ECF No. 23-1) at p. 12 ("[A]lthough Plaintiffs make passing reference to several other constitutional provisions in the first cause of action, they fail to allege any factual assertions in support of any such claims, particularly as against

in its heading.   However, the Complaint's general allegations of fact leading up to the causes of action state that ESDC is a business corporation "with the authority to determine which are 'essential services' delegated to it under New York's Executive Order No. 202.6."  As for ESDC's connection to the First Cause of Action, paragraph 88 of the Complaint alleges that "Brandon Lewis did request that the Empire State Development Corporation grant him status as an essential business, however this request was ignored."[15]  These are the only references to ESDC in the Complaint that are pertinent to the First Cause of Action.[16]

ESDC argues *inter alia* that it is not a "person" that can be sued under Section 1983, and that even if it is a "person" subject to suit under Section 1983, the Complaint fails to allege personal involvement by ESDC in any alleged constitutional violation.

Plaintiffs filed a single set of papers purporting to oppose the several motions to dismiss by the defendants.[17] However, Plaintiffs' opposing memorandum of law (ECF No. 31) does not mention ESDC by name or address any of the arguments that are specific to ESDC.  In particular, Plaintiffs do not dispute that ESDC is sued only in the First Cause of Action, nor do they dispute ESDC's contention that the First Cause of Action's claim against ESDC is based on the allegation that ESDC "ignored" Brandon Lewis's request

---

ESD.").  Plaintiffs' response does not dispute ESD's characterization, and in any event the Court agrees with ESD.

[15] Executive Order 202.6 indicates in pertinent part that "[a]ny other business may be deemed essential after requesting an opinion from the Empire State Development Corporation."

[16] The Complaint further indicates that, in connection with Executive Order No. 202.10, which banned "non-essential gatherings," ESD "issued guidance" "stating that 'congregate services within houses of worship are prohibited,'" evidently because they were deemed "non-essential."  However, such allegation is not related to the First Cause of Action.  Further, although Plaintiff Duclos and Defendant ESDC are both named in the heading of the First Cause of Action, the Complaint does not give any indication that ESDC harmed Duclos. *See*, Compl. at ¶¶ 21, 108-114.

[17] See, Pl. Mem. of Law (ECF No. 31) at p. 10 ("[P]laintiffs address and rebut each of these claimed immunities and defenses.").

to have The Firing Pin classified as an "essential business."[18]   Plaintiffs also do not

dispute ESDC's assertion that the Complaint fails to allege a basis to impose liability

against ESDC under Section 1983.   On each of these points, ESDC's motion to dismiss

is essentially unopposed.   The Court cannot grant a Rule 12(b)(6) motion merely because

it is unopposed.[19]   Nevertheless, where, as here, the Plaintiffs have responded to the

motion to dismiss but have not disputed particular arguments or defended certain claims,

the Court may regard Plaintiffs as having conceded those arguments and abandoned

those claims.[20]   For this reason alone, ESDC is entitled to dismissal on the grounds

discussed above which Plaintiffs have not contested.

Alternatively, however, the Court agrees that the Complaint fails to state an

actionable Section 1983 claim against ESDC.[21]   In that regard, ESDC first maintains that

---

[18] *See*, ESDC's Memo. of Law (ECF No. 23-1) at p. 9, n. 5 ("Plaintiffs have not alleged facts that show that ESD[C] was personally involved in any unconstitutional conduct.  They allege only that the ESD[C] ignored Brandon Lewis's request that his business be granted essential business status, *see*, Compl. ¶ 57[.]").

[19] *See, McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

[20] *cf., Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("Where a partial response to a motion is made—i.e., referencing some claims or defenses but not others—a distinction between *pro se* and counseled responses is appropriate. In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *see also, Yahui Zhang v. Akami Inc.*, No. 15-CV-4946 (VSB), 2017 WL 4329723, at *4 (S.D.N.Y. Sept. 26, 2017) ("In his opposition, Zhang does not address or respond to Defendants' motion to dismiss Count XIII. Therefore, I find that Zhang has abandoned his GBL claim alleged in Count XIII and could grant Defendants' motion to dismiss with regard to Count XIII on that basis alone."); *Sullivan v. City of New York*, No. 14-CV-1334 JMF, 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015) ("Plaintiff did not respond to the order to show cause and gave no indication of an intention to proceed with his claims against the CJA Defendants. At the same time, Plaintiff continued to actively litigate the case, but only against the other Defendants.  Under the circumstances, the Court could properly deem Plaintiff to be pursuing his claims against those other Defendants, but to have abandoned his claims against the CJA Defendants— in much the same way that it could properly deem a represented party to have abandoned claims if, in opposing a motion to dismiss multiple claims, it addressed only some of them."), *aff'd*, 690 F. App'x 63 (2d Cir. 2017)

[21] Because of this, the Court need not decide whether ESD is entitled to Eleventh Amendment immunity from claims for money damages. *See, Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 488, 496 (N.D.N.Y. 2020) (Declining to decide whether ESD is protected by sovereign immunity, stating: "The

it is a state agency and not a "person" that can be sued under Section 1983.[22]  However, the Court disagrees.  The Second Circuit and the New York Court of Appeals have each referred to ESDC as a "public-benefit corporation," as opposed to a state agency.[23]  Additionally, other courts have called ESDC a "public benefit corporation," *see Goldstein v. Pataki*, 516 F.3d 50, 60 (2d Cir. 2008) ("ESDC ... is organized under state law as a public-benefit corporation."), which "exist[ ] independently of the State," *Bordeleau v. State*, 18 N.Y.3d 305, 316, 937 N.Y.S.2d 126, 960 N.E.2d 917 (2011).").  Indeed, the Second Circuit has indicated that ESDC is essentially synonymous with the New York State Urban Development Corporation. *See Goldstein v. Pataki*, 516 F.3d at 53 ("[T]he Project is being carried out, in part, through the assistance of the New York State Urban Development Corporation, which also operates as the Empire State Development Corporation ("ESDC"), a public-benefit corporation and political subdivision of New York State.").

---

parties dispute the nature of Defendant ESD[C. . . .   However, t]he Court can sidestep the sovereign immunity issue because, "[w]hile the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, ... it is not coextensive with the limitations on judicial power in Article III." *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998). Similarly, "sovereign immunity [is more like] an affirmative defense than ... a jurisdictional bar." *Warburton v. John Jay Coll. of Criminal Justice of City Univ. of New York*, No. 14-CV-9170, 2015 WL 3948107, at *3 (S.D.N.Y. June 29, 2015) (quoting *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013)). Thus, the Court is not required to resolve the sovereign immunity issue prior to turning to the merits of the parties' motions, unlike, say, standing, mootness, or other issues that bear on the Court's subject matter jurisdiction. *See Thomas v. Butkiewicus*, No. 13-CV-747, 2013 WL 12303036, at *1 (D. Conn. Dec. 20, 2013) (declining to hold that "Eleventh Amendment immunity is a true issue of subject matter jurisdiction").").
[22] ESDC Mem. of Law (ECF No. 23-1) at p. 8
[23] *See, Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d at 488 n. 1 ("The Court notes that, according to ESD[C]'s website, 'Empire State Development is the umbrella organization for New York's two principal economic development financing entities: The New York State Urban Development Corporation and the New York Job Development Authority.' About Us, Empire State Development, https://esd.ny.gov/about-us (last visited July 5, 2020); *see also Leger v. Kalitta*, No. 16-CV-6545, 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) ("[T]he Court may take judicial notice of documents retrieved from official government websites or other government records from such websites.") (internal quotation marks omitted).

Case 6:20-cv-06316-CJS   Document 41   Filed 12/08/21   Page 30 of 33

A public benefit corporation is considered a municipality that may be sued under

Section 1983,[24] provided that the Complaint adequately states a basis for the imposition

of *Monell* liability:

> The BPCA is a "public benefit corporation" created by New York state law.
> *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 892 F.3d
> 108, 109-10 (2d Cir. 2018). It therefore can be held liable under § 1983 only
> if the alleged constitutional deprivation is the result of a "policy or custom."
> *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing
> *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56
> L.Ed.2d 611 (1978)); *see also Dangler v. N.Y.C. Off Track Betting Corp.*,
> 193 F.3d 130, 142-43 (2d Cir. 1999) (applying *Monell* to claims against
> another public benefit corporation).

*Greer v. Mehiel*, 805 F. App'x 25, 30–31 (2d Cir.), *cert. denied*, 141 S. Ct. 136, 207 L. Ed.

2d 1080 (2020), *reh'g denied*, 141 S. Ct. 217, 207 L. Ed. 2d 1161 (2020*); see also, Miller

v. Nassau Health Care Corp.*, No. 18-CV-6500(JS)(GRB), 2019 WL 2164086, at *4

(E.D.N.Y. May 16, 2019) ("Public benefit corporations, such as the NHCC, are municipal

entities for the purpose of Section 1983.") (collecting cases); *Eslin v. Hous. Auth. of Town

of Mansfield*, No. 3:11-CV-134 JCH, 2012 WL 113666, at *3 (D. Conn. Jan. 13, 2012)

("The Second Circuit and district courts within it have repeatedly held that *Monell*'s 'policy

or custom' standard applies to independent public corporations created under state law,

such as transit and housing authorities.") (collecting cases).

With regard to establishing *Monell* liability against a public benefit corporation or

other municipal entity,

> "[c]ourts have recognized four ways for plaintiffs to demonstrate a policy or
> custom: (1) a policy statement, ordinance, regulation, or decision officially
> adopted and promulgated by that body's officers; (2) conduct ordered by a
> municipal official with policymaking authority; (3) actions taken pursuant to

---

[24] "States are protected by the Eleventh Amendment while municipalities are not." *Will v. Michigan Dep't
of State Police*, 491 U.S. 58, 58, 109 S. Ct. 2304, 2306, 105 L. Ed. 2d 45 (1989).

> governmental custom even though such a custom has not received formal
> approval through the body's official decision making channels; or (4) a
> failure to train municipal employees that amounts to deliberate indifference
> to the rights of persons with whom the [employees] come into contact."

*Washington v. Eaton*, No. 3:20-CV-1111(VLB), 2021 WL 3291658, at *6 (D. Conn. Aug.

2, 2021) (quoting *Walker v. City of New York*, No. 12-CV-5902, 2014 WL 1259618, at *2

(S.D.N.Y. Mar. 18, 2014)).[25]

Here, Plaintiffs have not actually alleged the existence of a municipal policy or

practice by ESDC.   Rather, as discussed earlier, Plaintiffs merely allege that ESDC

committed a constitutional violation by "ignoring" Lewis's request to have The Firing Pin

re-classified as an "essential" business.   The Complaint does not allege that ESD had a

policy or practice of ignoring such requests generally, that it had a policy or practice of

ignoring such requests from gun shops or firing ranges in particular, or that it was aware

that the classification of The Firing Pin as a non-essential business was somehow

violative of federal rights.   Accordingly, at most the Complaint alleges a single instance

of municipal inaction by ESDC.

A failure to act can amount to a municipal policy or practice in certain limited

circumstances involving more than just negligence or bureaucratic inaction:

> Municipal inaction may constitute a policy or custom under *Monell* 'where a
> local government is faced with a pattern of misconduct and does nothing,
> compelling the conclusion that the local government has acquiesced in or
> tacitly authorized its subordinates' unlawful actions.' *Reynolds v. Giuliani*,
> 506 F.3d 183, 192 (2d Cir. 2007).   A municipal failure to act will constitute

---

[25] Plaintiffs who make out a claim under *Monell* may recover money damages as well as injunctive and declaratory relief. *See, Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.") (quoting *Monell*). Although here the Court has already dismissed Plaintiffs' claims for declaratory and injunctive relief.

> official policy or custom 'only where the need to act is so obvious, and the
> inadequacy of current practices so likely to result in a deprivation of federal
> rights, that the municipality or official can be found deliberately indifferent to
> the need.' *Id*. Such inadequate policies 'must reflect a deliberate choice
> among various alternatives, rather than *negligence or bureaucratic
> inaction*.' *Id*. at 193. In addition, the plaintiff must 'show a causal
> relationship' between the municipalities' failures and 'the alleged
> deprivations to plaintiffs.' *Id*.

*Thawney v. City of New York*, No. 17 CIV. 1881 (PAE), 2018 WL 4935844, at *6 (S.D.N.Y.

Oct. 11, 2018) (emphasis added); *see also, Jenkins v. City of New York*, 388 F. Supp. 3d

179, 186 (E.D.N.Y. 2019) ("[T]he plaintiff must show that the municipality's failure to

investigate or rectify the situation was 'the result of a conscious choice rather than mere

negligence ... or bureaucratic inaction.' *Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 128 (2d Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct.

1197, 103 L.Ed.2d 412 (1989)).").

Here, the Complaint alleges only that ESDC "ignored" Lewis's request.   Even

assuming that ignoring such a request could somehow amount to a constitutional

violation, the reference to a single instance of apparent bureaucratic inaction[26] does not

plausibly allege a municipal policy or practice. *See, e.g., Santiago v. City of Rochester

Police Dep't*, No. 19-CV-6859-FPG, 2021 WL 3270511, at *7 (W.D.N.Y. July 30, 2021)

("Plaintiffs specifically allege that the footage shows that officers "ignored, or were

oblivious to," facts that should have prevented Santiago from arrest/criminal charges.

Even assuming it were true that the responding officers failed to adequately investigate,

such a single incident does not raise an inference of the existence of a custom or policy.")

---

[26] The Complaint does not plausibly allege that ESCD's failure to act on Lewis's request was the result of a conscious choice as opposed to mere negligence or bureaucratic inaction.

(citation omitted); *see also, Gleason v. Scoppetta*, 566 F. App'x 65, 70 (2d Cir. 2014) ("Gleason's allegations regarding the City's "unofficial policy" of ignoring breaches of firefighters' privacy interests are too conclusory to state a plausible claim against the City. . . .  Nor does Gleason allege that the bad acts in this case were so widespread as to constitute a policy.").   Consequently, the First Cause of Action does not state an actionable *Monell* claim against ESDC, and ESDC is therefore entitled to dismissal of the Complaint.

## CONCLUSION

The motions to dismiss by James, Corlett and ESDC (ECF Nos. 20 & 23) are granted for the reasons discussed above.  The Clerk is directed to terminate James, Corlett and ESDC as parties.  The Court will rule upon the remaining motion to dismiss by Cuomo in a separate decision and order.

SO ORDERED.


Dated: Rochester, New York
         December 8, 2021              ENTER:


                                       CHARLES J. SIRAGUSA
                                       United States District Judge