UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRANDON LEWIS, THE FIRING PIN, LLC,
SHANNON JOY, JAMES OSTROWSKI,
STEPHEN FELANO, DUANE WHITMER,
SETH DUCLOS, and LISA REEVES,
doing business as Big Red Barber Shop,

                                        Plaintiffs

                                                        DECISION and ORDER

-vs-
                                                        20-CV-6316 CJS

ANDREW M. CUOMO, individually and as
Governor of New York,
                                        Defendant
_____


INTRODUCTION

      Plaintiffs filed this action to challenge various aspects of the Covid-19 "lockdown" imposed in the State of New York beginning in March 2020.  Specifically, Plaintiffs maintain that the New York State Legislature's decision, in response to the Covid-19 pandemic, to hastily amend New York State Executive Law § 29-a to grant greater emergency powers to former Governor Andrew Cuomo ("the Governor" or "Cuomo"), and Cuomo's subsequent issuance of various executive orders pursuant to that law, as well as his later delegation of powers to "unelected officials throughout the State," was unlawful and violated their federal constitutional rights.  Apart from challenging the process by which Cuomo came to exercise such emergency powers, Plaintiffs also contend that Cuomo's executive orders imposed unconstitutional restrictions on their federal constitutional rights.  Defendants, meanwhile, maintain that the actions taken by the legislature and Cuomo were perfectly lawful, and that the executive orders did not

1

violate any federal constitutional provision.  All defendants except Cuomo have been dismissed from the action.  Now before the Court is a motion to dismiss by Cuomo. (ECF No. 25).  For the reasons discussed below, the motion is granted.

BACKGROUND

On May 15, 2020, Plaintiffs commenced this action with the filing of a Complaint purporting to seek vindication of various rights guaranteed by the U.S. Constitution which, Plaintiffs contend, Defendants opportunistically violated (based on their political and philosophical opposition to those rights, especially Second Amendment rights) while ostensibly responding to the Covid-19 Pandemic.  The Complaint identifies the particular rights at issue as

> various rights, including natural rights, protected by the United States Constitution, including the right of public and religious assembly under the First Amendment, the right to keep and bear arms under the Second Amendment, the right to be free from unlawful seizures under the Fourth Amendment, the right to operate a business under the Fifth and Fourteenth Amendments, and the right secured by the Fifth, Ninth, Tenth and Fourteenth Amendments and the Guarantee Clause to be free of all restrictions unlawfully decreed by the Governor in response to the coronavirus (Covid-19) pandemic.

Compl. ¶ 1.  The Complaint purports to seek relief from this Court "pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. § 1983."

The Complaint recites that "[o]n March 2, 2020, apparently in response to the Coronavirus [outbreak], the New York State Legislature passed a bill amending Section 29-a of the Executive Law to increase the Governor's powers to deal with a broad array of emergencies."  The Complaint maintains that this amounted to an illegitimate delegation of legislative power to Cuomo by the Legislature.  The Complaint states that Cuomo, armed with these additional powers, proceeded to issue a series of executive

orders limiting the operation of, and access to, institutions and establishments where people would ordinarily congregate, such as churches, synagogues, schools, places of employment, movie theaters, shopping malls, restaurants, amusement parks, bowling alleys, gun shops, barber shops and hair salons.  The Complaint refers to these various restrictions collectively as "the lockdown."   The Complaint notes that Cuomo further issued executive orders requiring citizens to wear face coverings in various settings. Further, the Complaint indicates that on May 11, 2020, Cuomo purported to delegate "his emergency powers to regional committees and officials, [giving them] vast discretion to continue any of his emergency decrees," thereby "unlawfully delegat[ing] the very same legislative powers that were unlawfully delegated to him."

The Complaint maintains that this entire series of events was unlawful, and, in particular, that the delegations of legislative power, first by the legislature and then by Cuomo, were "all in violation of due process and the Guarantee Clause" of the U.S. Constitution.  More specifically as to this point, the Complaint states:

169. On March 2, 2020, the State Legislature passed a bill that gave the Governor unprecedented powers to rule by decree in vaguely defined emergency situations.

170. The law had previously given the Governor only the power to suspend statutes in such cases.

171. The statute [New York Executive Law § 29-a] improperly delegates wholesale legislat[ive] power to the Governor which was delegated by the people only to the Legislature and only under strict procedural requirements including dividing the legislative power into two separate houses, the Senate and the Assembly, and requiring their election by district every two years and by dispersing that power among what is currently 213 legislators. NY Constitution, Article III, Section 1, *et seq*.; *Cf.*, German Enabling Act of 1933 ("Laws enacted by the Reich government shall be issued by the Chancellor and announced in the Reich Gazette.")

3

172. The State Constitution gives all legislative power to the Legislature only.

173. Thus, the Governor has no legal authority or jurisdiction to issue directives and all such directives are null and void ab initio just as they would be if issued by any other of the other 19,440,469 other residents of New York.

174. In addition to the Governor and his agents violating other specific provisions of the Bill of Rights and Constitution, for them to impose legal obligations, legal coercion and various penalties on citizens, without the slightest hint of legal authority is a violation of due process under the 5th and 14th Amendments to the Constitution as well as the Guarantee Clause ("The United States shall guarantee to every state in this union a republican form of government." Article IV)

175. Thus, the Governor's orders closing businesses, limiting public assembly, religious gatherings, forcing people to wear masks in public, etc. are all illegal.

Compl. at ¶ ¶ 169–175.

"The complaint seeks an injunction against all of the Governor's [Covid-19] executive orders and a declaration that the statute [Executive Law § 29-a] is unconstitutional." Pl. Mem. of Law (ECF No. 31) at p. 13.  Plaintiff's challenge to § 29-a, however, is not limited to the context of the Covid-19 Pandemic.  Rather, Plaintiffs object to the statute's grant of power to the Governor in all the enumerated emergency situations, and particularly those involving "terrorism" and "cyber events."   More broadly, the Complaint contends that the Defendants, and primarily Cuomo, with the complicity of the Democrat-controlled New York Legislature, used the Covid-19 pandemic as an "excuse" to take rights from New York's citizens. *See*, Compl. at ¶ 2 ("The Governor and the Legislature have used a serious pandemic as an excuse to revoke a long list of

natural rights of the people of the State, which rights are unalienable and guaranteed by the United States Constitution.").  Indeed, the Complaint alleges that Defendants engaged in a "bloodless coup against the constitution." Compl. at ¶ 9 ("To be blunt, a bloodless coup against the constitution has been undertaken by the State itself.").

Apart from the alleged unconstitutionality of the delegation of legislative power, the Complaint contends that the various Executive Orders that Cuomo issued pursuant to that delegation (which closed businesses, forbade public gatherings and required face coverings) were themselves unconstitutional.  In that regard, the Complaint contends that the Covid-19 outbreak did not provide a sufficient justification for the executive orders, since "[t]here is little if any solid data to show that locking down society yields a better result with respect to the virus, than merely taking precautionary measures" aimed at those most vulnerable to the illness, namely, persons who are elderly and in poor health. According to the Complaint, "[a]llowing younger and healthier people at low risk to resume normal activities and develop herd immunity while encouraging those at high risk to take precautionary measures is not only the best and most rational strategy but one that does not impinge on constitutional rights." The Complaint further asserts that "[t]here is exactly zero evidence that this lockdown is on the whole . . .  beneficial to society, to the economy or to our overall health and welfare."  To the contrary, the Complaint alleges that the lockdown has had devastating effects on society. *See*, Complaint at ¶ 191 ("The Governor's unlawful lockdown of society and the economy, mirrored in most other states by their own governors, has devastated American society and its economy.").  The Complaint asserts that the lockdown was especially unnecessary with regard to upstate New York, which Plaintiffs contend has become "a political colony of downstate."

Alternatively, the Complaint alleges that to the extent the lockdown became truly "necessary," it was only because Cuomo and the state legislature responded incompetently to the outbreak in the first place, thereby creating a situation in which they could justify violating Plaintiffs' rights.

The Complaint maintains that Cuomo's "emergency decrees" had a constitutionally-injurious effect on each of the Plaintiffs.  In particular, the Complaint alleges that Brandon Lewis ("Lewis") is the owner of The Firing Pin LLC, a firearms retail shop that was deemed "nonessential" and forced to close to in-store sales (though it could make curbside sales); that Shannon Joy ("Joy") is the owner of Joy Media and the radio program "The Shannon Joy Show," and that her ability to work, attend church worship services, have her children receive public education, attend protests and avoid wearing a mask, were restricted; that James Ostrowski ("Ostrowski") was prevented from attending Roman Catholic Masses, was harassed by police during a "rally to reopen Buffalo," was prevented from exercising at the gym and was forced to wear a face mask when in public; that Seth Duclos ("Duclos") attained the age of 21 during the lockdown and was prevented from completing his application for a New York State firearms license due to the fact that the lockdown resulted in the temporary closure of the Monroe County Pistol Permit Office; that Stephen Felano ("Felano"), a self-described "Second Amendment Rights Advocate," was deterred from engaging in pro-Second Amendment gun rights advocacy, was prevented from engaging in firearms and marksmanship training and was forced to wear a face covering in public; that Duane Whitmer ("Whitmer"), a self-described "libertarian and Second Amendment activist and firearms owner," "candidate for Congress in the 27th District of New York as candidate of the Libertarian

Party" and "Chairman of the Erie County Libertarian Party," was deterred from attending or hosting public meetings or events involving the expression of pro-Second Amendment or Libertarian views, was limited in his opportunities to purchase firearms and ammunition, and was forced to wear a face covering; and that Lisa Reeves ("Reeves"), the sole proprietor of the Big Red Barber Shop in Ithaca, New York, was forced to close her business after it was deemed non-essential.

The Complaint purports to assert eight separate causes of action under Section 1983.  The First Cause of Action alleges that Defendants violated the federal constitutional rights of Lewis, The Firing Pin LLC and Duclos under the Second, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause, the Takings Clause and the Commerce Clause, by forcing the Firing Pin and other gun shops to close. The Second Cause of Action alleges that Defendants violated the rights of Joy, Ostrowski, Felano and Whitmer under the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, by depriving them of their rights to assembly and free speech.  The Third Cause of Action alleges that Defendants violated the rights of Joy and Ostrowski under the First and Fourteenth Amendments, by prohibiting and/or restricting religious gatherings.  The Fourth Cause of Action alleges that Defendants violated the rights of Duclos, Lewis and the Firing Pin LLC under the Second, Fifth, Ninth, Tenth and Fourteenth Amendments, by causing the Monroe County Pistol Permit Office to close temporarily.  The Fifth Cause of Action alleges that Defendants violated the rights of Joy, Ostrowski, Felano and Whitmer under the Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments by requiring them to wear face masks in public places.  The Sixth Cause of Action alleges that Defendants violated the rights of Felano and Whitmer under the

Second and Fourteenth Amendments and the Commerce Clause, by closing gun shops and thereby restricting the purchase of ammunition. The Seventh Cause of Action alleges that Defendants violated the rights of Reeves under the Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause and the Commerce Clause, by forcing her to close her barber shop. With regard to all seven of these claims, Plaintiffs demand money damages against Cuomo.

The Eighth Cause of Action purports to state a claim for declaratory and injunctive relief, on behalf of all Plaintiffs, "against Section 29-a of the [New York] Executive Law and all directives issued thereunder." In that regard, the claim realleges violations of the First, Second, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments, the Guarantee Clause and the Commerce Clause, and states in pertinent part:

> [T]he Legislature's illegal delegation of power to the Governor and the combined impact of the Governor's unlawful executive orders have devastated the rights of New Yorkers, wrecked the economy and caused significant damage to each of the plaintiffs' lives, both directly and indirectly.
>
> ***
>
> The defendants' actions violated the Plaintiffs' clearly established rights to liberty and personal security and due process as guaranteed by the Constitution.

Compl. at pp. 48–49.

On August 6, 2020, Cuomo filed the subject motion (ECF No. 25) to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Cuomo contends that the Complaint should be dismissed under Rule 12(b)(1) since, *inter alia*, the claims for injunctive and declaratory relief are moot, the claims under the Guarantee Clause are non-justiciable and the claims seeking damages against him in his official capacity are barred by the Eleventh Amendment. Cuomo further indicates

that the Complaint should be dismissed under Rule 12(b)(6) because, *inter alia*, he has absolute legislative immunity.

After Cuomo's motion was briefed and submitted, a number of events took place that affect this action.   Beginning on March 5, 2021, the New York State Legislature passed S. 5357, repealing the grant of additional emergency powers that had been granted to Cuomo in Chapter 23 of the laws of 2020.   The Act stripped Cuomo of the ability to issue any new emergency executive orders, while allowing him to continue, and in some cases extend, the existing executive orders, subject to increased oversight by the Legislature.   Cuomo signed the bill into law on March 7, 2021.   The Act expressly referred to the "termination of certain executive powers" and "declare[d] that the governor [was] adequately equipped with his *previously existing* emergency powers and with the authorization to continue existing directive extension and modification powers to deal with the [Covid-19] situation." (emphasis added).   Further, the Act stated that its intent was to "restore the pre-pandemic balance of power [between] the governor and the legislature."

On June 24, 2021, Cuomo issued Executive Order No. 210, effectively declaring an end to the Covid-19 state of emergency that he had declared on March 7, 2020.   The Executive Order indicated that "Executive Orders 202 through 202.111 and Executive Orders 205 through 205.3 [were] no longer necessary," and were "rescinded effective June 25, 2021."

And, finally, effective August 24, 2021, Cuomo resigned as Governor of New York in the wake of allegations of misconduct, which led to widespread calls for his resignation and threats of impeachment by the New York Legislature.

In sum, since the filing of this action and the briefing of the motions to dismiss, New York's Covid-19 state of emergency ended, Cuomo's Covid-19-related executive orders were permanently rescinded, New York's Executive Law was amended to place New York governors back on the same footing with regard to emergency powers that existed prior to the Pandemic, and Cuomo resigned from office. Against this backdrop the Court will consider the subject motion to dismiss the Complaint.

DISCUSSION

Section 1983

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, which "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).

Motion Under Fed. R. Civ. P. 12(b)(1)

A motion under Rule 12(b)(1) asserts the defense of "lack of subject-matter jurisdiction." Here, Cuomo asserts the following arguments under this rule: 1) any claims for money damages against him in his official capacity are barred by the Eleventh Amendment; 2) the claims for declaratory and injunctive relief (Eighth Cause of Action) must be dismissed for lack of standing or mootness; and 3) the Guarantee Clause claims are non-justiciable political questions. The Court will consider each of these arguments

in turn.

### Eleventh Amendment

Cuomo contends that Plaintiffs cannot recover money damages against him in his official capacity.  Eleventh Amendment sovereign immunity protects states and arms of the state from being sued. *See, Caruso v. Zugibe*, 646 F. App'x 101, 104 (2d Cir. 2016) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state.") (citation omitted).  The Eleventh Amendment similarly divests the Court of subject matter jurisdiction[1] over any claims for money damages against a state official acting in his or her official capacity unless the state has consented to the suit or waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006).  Because there has been no waiver of immunity or consent to suit in this case, any claim for money damages against Cuomo in his official capacity is dismissed with prejudice.

### Standing and Mootness

With regard to Plaintiff's claims for injunctive and declaratory relief (Eighth Cause of Action), Cuomo contends that Plaintiffs lack standing, or that the claims are now moot, since the lockdown has been lifted.  Indeed, not only has the lockdown been lifted, but the Legislature has amended Executive Law § 29-a and all of the challenged executive

---

[1] *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("The Eleventh Amendment presents a jurisdictional bar that deprives federal courts of the power to hear certain claims."); *but see, Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 51 (2d Cir. 2020) ("Whether Eleventh Amendment immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense has not yet been decided by the Supreme Court or this Court."), cert. denied, 141 S. Ct. 1070, 208 L. Ed. 2d 532 (2021), reh'g denied, 141 S. Ct. 1530, 209 L. Ed. 2d 262 (2021).

orders have been rescinded.

The legal principles concerning the jurisdictional requirements relating to standing

and mootness are well settled:

> Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to "Cases" and "Controversies." *E.g., Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019). The standing doctrine, which emerges from Article III, is designed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). The doctrine imposes three requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*.

*SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020).

> The case-or-controversy limitation on our jurisdiction, and its focus on parties' stakes in the action, manifests in three distinct legal inquiries: standing, mootness, and ripeness. Only the first two are at issue here. "[S]tanding doctrine evaluates a litigant's personal stake as of the outset of litigation." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) (quoting *Cook v. Colgate*, 992 F.2d 17, 19 (2d Cir. 1993) ); see also Lujan, 504 U.S. at 569 n.4, 112 S.Ct. 2130; *Gollust v. Mendell*, 501 U.S. 115, 124, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (discussing Section 16(b) statutory standing as "limited only by conditions existing at the time an action is begun"). Mootness doctrine determines what to do "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation" after its initiation. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013) (internal quotation marks omitted); *see also United States v. Sanchez-Gomez*, —— U.S. ——, 138 S.Ct. 1532, 1537, 200 L.Ed.2d 792 (2018).

*Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 221 (2d Cir. 2018).

> A case becomes moot pursuant to Article III's Case or Controversy Clause when it is impossible for a court to grant any effectual relief whatever to the prevailing party.  Accordingly, as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

*United States v. Young*, 998 F.3d 43, 50–51 (2d Cir. 2021) (citations and internal quotation marks omitted).

An action seeking declaratory and/or injunctive relief against an allegedly unconstitutional statute becomes moot if the statute is repealed. *See, Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc*., 404 U.S. 412, 414–15, 92 S. Ct. 574, 575–76, 30 L. Ed. 2d 567 (1972) ("The only relief sought in the complaint was a declaratory judgment that the now repealed Fla.Stat. s 192.06(4) is unconstitutional as applied to a church parking lot used for commercial purposes and an injunction against its application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."); *see also, Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59, 61 (2d Cir. 1992) (Claim for declaratory and injunctive relief involving challenge to New York State regulation became moot when State suspended the regulation: "Constitutional challenges to statutes are routinely found moot when a statute is amended.").

The repeal of a challenged statute does not, however, moot a plaintiff's claim for money damages. *See, Marin v. Town of Se.*, 136 F. Supp. 3d 548, 562 (S.D.N.Y. 2015) ("[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *see also Van Wie v. Pataki*, 267 F.3d 109, 115 n. 4 (2d Cir.2001) (noting that a claim for damages, even nominal in nature, prevents mootness); *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir.1987) ("Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." (internal quotation marks omitted)); *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d at 61 ("Although

appellants' claims for declaratory and injunctive relief are moot, their claims for damages under 42 U.S.C. § 1983 as a result of the minority program's past operation remain viable.").

Here, although Cuomo refers to both standing and mootness, he is not alleging that Plaintiffs lacked a personal stake in the outcome of the action at its commencement. Rather, he contends that intervening circumstances – the repeal of the statute, the lifting of the lockdown, etc. – have rendered Plaintiffs' claims moot.   The Court agrees that based on the facts set forth above, Plaintiffs' demand for declaratory and injunctive relief is moot.   In that regard, the Complaint's Eighth Cause of Action demands "injunctive and declaratory relief against Section 29-a of the Executive Law and all directives issued thereunder."   Plaintiffs had standing to pursue such a claim at the outset of the litigation. However, Section 29-a has now been amended to revoke the additional emergency powers that were granted to Cuomo at the start of the Covid-19 pandemic, and the challenged Covid-19-related executive orders have all been rescinded.   For these reasons, it is not reasonably likely that the challenged actions will be reinstated.   On this point, in a different case the Second Circuit recently stated:

> As the Governor notes, [Executive Order] 202.28 expired on June 25, 2021, and has not been renewed. *See* Exec. Order No. 202.109, 9 N.Y.C.R.R. § 8.202.109 (2021) (extending disaster emergency through June 24, 2021); *see also* Exec. Order No. 210, 9 N.Y.C.R.R. § 8.210 (2021) (rescinding Executive Orders 202 through 202.111) . . .   The claims relating to [Executive Order] 202.28 are therefore . . . moot, unless plaintiffs can demonstrate that they remain under a constant threat that government officials will use their power to reinstate the challenged restrictions. [Executive Order] 202.28 was enacted as part of a statewide response to the COVID-19 crisis. We are not persuaded that the circumstances under which the security deposit provision might be reinstated are sufficiently likely to reoccur such that plaintiffs "remain under a constant threat of reinstatement.

*36 Apartment Assocs., LLC v. Cuomo*, 2021 WL 3009153, at *2") (citations and internal quotation marks omitted); *see also, Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021) ("There is no reasonable prospect that the Governor's rescinded order will be revived, especially since the New York State legislature curtailed the Governor's emergency powers to reissue COVID-19 restrictions. Nor have we been pointed to any ongoing harm from or lingering effect of the challenged order.") (citations and internal quotation marks omitted). Consequently, the Court finds that Plaintiffs' demands for injunctive and declaratory relief, including the Eighth Cause of Action seeking injunctive and declaratory relief, are moot and must be dismissed.

*Justiciability/Political Question Doctrine*

Cuomo also maintains that the "Guarantee Clause" claims, in which Plaintiffs contend that the delegation of legislative power to and by Cuomo was unlawful and deprived them of a republican form of government, must be dismissed for lack of jurisdiction because they raise a non-justiciable political question. "The political question doctrine is more properly characterized as a 'justiciability' question than as a question of subject matter jurisdiction. Nevertheless, it is properly raised on a motion under Rule 12(b)(1)." *Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 330 (S.D.N.Y. 2013)

> "[T]he political question doctrine is a function of the constitutional framework of separation of powers. Although prudential considerations may inform a court's justiciability analysis, the political question doctrine is essentially a constitutional limitation on the courts.... [W]here adjudication would force the court to resolve political questions, the proper course for the courts is to dismiss." *767 Third Avenue Associates v. Consulate General of Socialist Federal Republic of Yugoslavia*, 218 F.3d 152, 164 (2d Cir.2000) (quotation marks and citations omitted).

*Romeu v. Cohen*, 121 F. Supp. 2d 264, 274 (S.D.N.Y. 2000), aff'd, 265 F.3d 118 (2d Cir. 2001).

The U.S. Supreme Court and other courts have typically found that "guarantee clause" challenges to state action involve non-justiciable political questions. *See, Futia v. Westchester Cty. Bd. of Legislators*, No. 20 CV 1237 (VB), 2020 WL 4570494, at *6 (S.D.N.Y. Aug. 6, 2020),  ("Challenges to state action premised on violations of the Guarantee Clause traditionally present nonjusticiable political questions."), *aff'd*, 852 F. App'x 30 (2d Cir. 2021); *see also*, *Schulz v. New York State Exec., Pataki*, 960 F. Supp. 568, 575–76 (N.D.N.Y. 1997) ("The Court can find few cases where the Guarantee Clause has been invoked to invalidate the actions of a state itself. On the contrary, when the Guarantee Clause is invoked, it is invariably done so in an effort to challenge an action of the federal government.  In light of the Guarantee Clauses' implicit protection of state governmental processes from the tyranny of an all-powerful federal sovereign, it would seem imprudent on the part of the federal judiciary to allow the Clause to be used to challenge a state's own lawmaking."), *aff'd sub nom. Schulz v. New York State Exec.*, 162 F.3d 1148 (2d Cir. 1998); *Senate of Com. of Puerto Rico ex rel. McClintock v. Acevedo Vila*, 2015 WL 2671043 at *2 (D.P.R. Oct. 19, 2005) ("Federal courts have consistently concluded that the Guarantee Clause does not require states to adopt a specific formula for the separation and sharing of powers among branches of their government, and that separation-of-powers disputes are therefore non-justiciable.") (collecting cases).

Plaintiffs oppose the dismissal of their Guarantee Clause claims, which arguably are the centerpiece of their Complaint.  Plaintiffs, though, do not really attempt to demonstrate, based on contrary legal authority, that Cuomo's argument concerning

justiciability is incorrect.   Rather, Plaintiffs merely urge the Court to reject the non-justiciability argument since "[t]here are no cases concerning the Guarantee Clause that remotely resemble these facts." Pl. Memo of Law (ECF No. 31) at pp. 22-23.   Indeed, Plaintiffs contend that "it is time to dust off the Guarantee Clause and enforce it," since it "has been largely ignored for 200 years."[2]

The Court, though, declines to find that this is one of the rare cases in which a Guarantee Clause claim might be justiciable,[3] and finds instead that the Guarantee Clause claims should be dismissed under Rule 12(b)(1) as raising a non-justiciable political question, namely, whether the New York State Legislature had the authority to delegate emergency powers to Cuomo. *See, Futia v. Westchester Cty. Bd. of Legislators*, 852 F. App'x 30, 32 (2d Cir. 2021) ("The district court . . . did not err in dismissing plaintiffs' Guarantee Clause claim for lack of subject matter jurisdiction because the claim presents nonjusticiable political questions, such as local government budget allocation.") (citation omitted).

In sum, Cuomo's motion to dismiss under Rule 12(b)(1) is granted to the extent that any claims for money damages claims against Cuomo in his official capacity are

---

[2] ECF No. 31 at pp. 20–21.

[3] The Court understands that Guarantee Clause claims may be justiciable in certain rare circumstances. *See*, Thomas C. Berg, The Guarantee of Republican Government: Proposals for Judicial Review, 54 U. Chi. L. Rev. 208 (1987) ("The Supreme Court generally has held that only Congress and the President, and not the federal judiciary, can enforce that guarantee—on the ground that all issues under the guarantee clause raise nonjusticiable 'political questions.'") (footnote collecting cases omitted).   However, some courts have emphasized that guarantee clause claims are not necessarily non-justiciable. *See, Democratic Party of Wisconsin v. Vos*, 966 F.3d 581, 589 (7th Cir. 2020) ("We do not interpret [any] decision by the Supreme Court as having categorically foreclosed all Guarantee Clause claims as nonjusticiable, even though no such claim has yet survived Supreme Court review. The district court thus went too far in saying that no Guarantee Clause claim could proceed to adjudication on the merits."); *see also, Kerpen v. Metro. Washington Airports Auth.*, 907 F.3d 152, 163 (4th Cir. 2018) ("For the most part, claims premised on the Guarantee Clause present nonjusticiable 'political questions,' unfit for resolution within the judicial branch.   But 'not all' claims under the Guarantee Clause are nonjusticiable.   The question of whether a claim is justiciable is a 'difficult' one.   Where the merits of the claim itself are easily resolved, the Supreme Court has bypassed the justiciability question entirely.") (citations omitted).

dismissed as barred by the Eleventh Amendment; the Eighth Cause of Action for declaratory and injunctive relief is dismissed as moot; and the Guarantee Clause claims are dismissed as raising a non-justiciable political question.

<u>Motion Under Fed. R. Civ. P. 12(b)(6)</u>

Cuomo alternatively seeks dismissal under Rule 12(b)(6).  The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

<u>Legislative Immunity</u>

Cuomo contends that he is entitled to absolute legislative immunity for the complained-of actions, namely, the issuance of the Covid-19 executive orders.[4]   In particular, Cuomo states:

> Here, Governor Cuomo's action about which Plaintiffs complain is the issuance of the Orders themselves, which is clearly legislative action. Indeed, Plaintiffs concede as much in the Complaint. *See*, Compl. at ¶ ¶ 66, 68, 72, 122, 129, 171-73, 291.  The Orders are generally applicable to all New Yorkers and apply prospectively.  Governor Cuomo's legislative activities taken in response to Covid-19 are therefore entitled to absolute immunity from all claims against him in any capacity.

---

[4] "[L]egislative immunity is a personal defense that may be asserted in the context of a challenge under Rule 12(b)(6) and is not proper for review as a jurisdictional bar under Rule 12(b)(1)." *Brown v. New York*, 975 F. Supp. 2d 209, 228 (N.D.N.Y. 2013) (citing *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 85, n. 4 (2d Cir. 2007)).

ECF No. 25-1 at pp. 6–7.

The principle of absolute legislative immunity to which Cuomo refers is well settled and does not apply just to legislators, but, rather, applies to actions that are legislative in nature even when performed by members of an executive branch:

> The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo–American law. . . . Recognizing this venerable tradition, we have held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. . . . [T]he exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. . . . *Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity.* . . . Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. . . . This leaves us with the question whether, stripped of all considerations of intent and motive, [the challenged] actions were legislative. . . . *We have recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions*.

*Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966, 970, 972-973 (1998) (emphasis added); *see also, In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015) ("The privilege protects the legislative process itself, and therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation."); *Warden v. Pataki*, 35 F. Supp. 2d 354, 358 (S.D.N.Y.) ("The well-settled doctrine of absolute legislative immunity, however, bars actions against legislators or governors—and, a fortiori, legislatures—on the basis of their roles in enacting or signing legislation.") (collecting cases), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999).

This rule is meant to allow participants in the legislative process to perform their jobs without fear of personal liability and reflects a judgment that problems can best be addressed through the political process. For example, the Supreme Court has indicated

that,

> [a]bsolute immunity for local legislators under § 1983 finds support not only in history, but also in reason.  . . .   Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability.

*Bogan v. Scott-Harris,* 118 S.Ct. at 971; *see also, id*. at 970 ("If corrupt, he [(the legislator)] may be impeached or indicted, but the law will not tolerate an action to redress the individual wrongs which may have been done."); *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 124, 150 (S.D.N.Y. 2017) ("Potential removal from office in the next election cycle, rather than legal liability, is the consequence for legislative acts."); *Brown v. New York*, 975 F.Supp.2d 209, 232 (N.D.N.Y. 2013) ("Legislative immunity applies to acts within the 'legislative sphere' even where the conduct, 'if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes.'") (quoting *Doe v. McMillan*, 412 U.S. 306, 312-13, 93 S.Ct. 2018 (1973)).

According to the Second Circuit, the Supreme Court in *Bogan v. Scott-Harris* set forth a "functional test . . . for deciding whether a defendant's acts are 'legislative' and therefore protected by the doctrine of absolute legislative immunity." *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 89 (2d Cir. 2007) ("*Rowland*").

> According to that test, two factors are relevant in determining whether a defendant's acts are within the sphere of legitimate legislative activity.  First, it is relevant whether the defendants' actions were legislative "in form," i.e., whether they were integral steps in the legislative process.  Second, it may also be relevant whether defendants' actions were legislative "in substance," i.e., whether the actions bore all the hallmarks of traditional legislation, including whether they reflected discretionary, policymaking decisions implicating the budgetary priorities of the government and the services the government provides to its constituents.

*\*\**

> [E]stablishing both elements is required in these circumstances [involving
> executive-branch officials]. In particular . . . before high-level executive
> branch [state] officials . . . can claim the protections of an immunity
> traditionally accorded to members of the legislative branch, it is important
> that they show that their activities were "legislative" both in form and in
> substance. Accordingly, [the proper inquiry for a district court is] defendants'
> alleged acts were both: (1) substantively legislative, i.e., acts that involve
> policy making; and (2) procedurally legislative, i.e., passed by means of
> established legislative procedures.

*State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d at 89–90 (citations and internal

quotation marks omitted).

Plaintiffs oppose Cuomo's claim of legislative immunity, relying primarily on a

decision and order from the United States District Court of the Northern District of New

York which found that Cuomo was not entitled to absolute legislative immunity for issuing

Covid-19 related executive orders, *Ass'n of Jewish Camp Operators v. Cuomo*, 470

F.Supp.3d 197 (N.D.N.Y. 2020) ("*Ass'n of Jewish Camp Operators*").  In that regard, the

Northern District Court found that Cuomo's executive orders were "arguably" "legislative

in substance," but "not legislative in form" since "the legislature playe[d] no part in drafting

or passing executive orders":

> Defendant's executive orders are not legislative in form.  The legislature
> plays no part in the drafting or passing [of] executive orders, that power is
> reserved for the executive branch.  Defendant's executive orders do not
> qualify as an 'integral step' in the legislative process; in fact, they avoid the
> legislative process altogether.

*Id*. at 212–213.  Plaintiffs also contend that Cuomo's action in issuing the subject

executive orders was not in accordance with "established legislative procedures" since

Cuomo did not properly have authority to issue the executive orders, for the reasons

discussed earlier. (Namely, that the Legislature's delegation of legislative power to

Cuomo was improper).

*Cuomo's action was procedurally legislative*

In considering the question of absolute legislative immunity, the first issue is whether Cuomo's issuance of the executive orders was "procedurally legislative."  This question asks whether Cuomo's issuance of the subject executive orders was "an integral step in the legislative process."  Significantly, in that regard, the "legislative process" at issue is the process for exercising emergency power under Executive Law § 29-a.[5]  Put differently, the issue is whether Cuomo's issuance of the executive orders was an integral step in the legislative scheme or process created by Executive Law § 29-a.  In the Court's view, the answer is clearly yes, since the New York State Legislature enacted Executive Law § 29-a specifically to give Cuomo expanded power to issue executive orders dealing with the Covid-19 Pandemic.  Indeed, the only way Executive Law § 29-a could  operate was for the Governor to issue executive orders following the declaration of an emergency.[6]  Moreover, it is the basic premise of Plaintiffs' lawsuit that Cuomo issued all of the challenged executive orders pursuant to that grant of legislative authority.[7]

---

[5] *See, Rowland*, 494 F.3d at 90 ("We are unable to determine on the current record whether defendants' alleged acts were 'integral steps in the legislative process.'  Although the District Court concluded that the governor has the legislative authority under Conn. Gen. Stat. § 4-85(b)(2) to make deficit reduction decisions, *it is unclear whether the alleged terminations [of state employees] were integral steps in the statutory budget process*.  More specifically, the record does not show whether defendants acted pursuant to their statutory budget authority when the ordered the terminations, or whether the terminations occurred independent of (or in violation of) that authority.") (emphasis added, citations omitted); *see also, State Emps. Bargaining Agent Coal. v. Rowland*, No. CIV. 303CV221 AVC, 2006 WL 141645, at *3 (D. Conn. Jan. 18, 2006) ("[T]he loss of jobs came about through executive order—a quintessentially executive function. For that executive function to be entitled to legislative immunity, it must have been authorized by some legislative scheme.") (citation omitted), *aff'd in part, appeal dismissed in part*, 494 F.3d 71 (2d Cir. 2007); *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d at 166 ("[D]rafting the sponsor's memo, approval message, and an executive order that is necessary to effectuate the new law are all components of the legislative process[.]").

[6] Denying  legislative immunity to the governor in such a situation would mean that to effectuate the statute/legislative scheme a governor would have to risk personal liability for any executive orders that he issued, which could conceivably chill his willingness to issue such order, thereby frustrating the legislative scheme.

[7] *See, e.g.*, Compl. at ¶ ¶ 43–44 ("The bill was rushed through in record time with a message of necessity

Accordingly, Cuomo's issuance of the executive orders was an integral step in the legislative process established by Executive Law § 29-a.

Of course, Plaintiffs contend that the purported grant of authority to Cuomo by the Legislature was unlawful since it violated the Guarantee Clause.  Plaintiffs maintain, therefore, that Cuomo's actions were not procedurally legislative, or, at least, that the Court cannot determine whether legislative immunity applies without first addressing the merits of their underlying claim:

> Such immunity requires a previous finding that the legislation was passed by means of established legislative procedures.  That is, however, precisely what is in dispute.  Thus, the argument begs the question.  To find that immunity applies, the Court must first find the Plaintiffs' substantive argument [to be] without merit.

ECF No. 31 at p. 16.   However, the Court disagrees.  Plaintiffs do not dispute that Cuomo was acting pursuant to the process established by Executive Law § 29-a, but, rather, they dispute whether the Legislature could properly give Cuomo that power.   The Court, though, has already determined that Plaintiffs' argument on this point raises a non-justiciable political question and has dismissed the Guarantee Clause claims.  Consequently, the Court is proceeding on the basis, *as alleged by Plaintiffs*, that Cuomo was in fact acting pursuant to a grant of authority from the Legislature to issue executive orders dealing with the Covid-19 Pandemic.[8]   The Court therefore finds that Cuomo's

---

from the Governor and was signed into law by him the very next day.  Based on that process, the Legislature purported to give the Governor the power to rule by decree and the Governor used that power to impose the greatest disruption in American society and personal liberty since 1776.").

[8] Plaintiffs' assertion that the amendment of Executive Law § 29-a was otherwise unlawful or unconstitutional is not a factual assertion, but is a legal conclusion that the Court is not required to accept as true. *See, e.g., Pitts v. D.C.*, 177 F. Supp. 3d 347, 362 (D.D.C. 2016) ("Plaintiffs explicitly allege that the street search was unlawful and unconstitutional, but these allegations amount to legal conclusions, and 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937[.]") (other citation omitted).

issuance of the executive orders was an integral step in the legislative process established by Executive Law § 29-a, and that Cuomo's action was thus "procedurally legislative."

Plaintiffs nevertheless urge the Court to follow the Northern District Court's decision in *Ass'n of Jewish Camp Operators*, which found that Cuomo's issuance of Covid-19 executive orders pursuant to Executive Law § 29-a was *not* procedurally legislative. However, the Court declines to do so. In the first place, the decision of another district court judge is, of course, not binding on this Court. More importantly, as discussed earlier, based on its reading of *Rowland* and the other cases cited in footnote 5, this Court interprets the phrase "legislative process" more broadly than did the Court in *Ass'n of Jewish Camp Operators*.[9] Consequently, while this action and *Ass'n of Jewish Camp Operators* both address the question of whether Cuomo's action in issuing the Covid-19 executive orders was procedurally legislative, this Court arrives at a different conclusion based on its reading of *Rowland* and its resulting understanding of the term "legislative process."

### Cuomo's action was substantively legislative

The Court must next consider whether Cuomo's action was also "substantively legislative." This inquiry asks whether the defendant's actions "bore all the hallmarks of traditional legislation, including whether they reflected discretionary, policymaking decisions." *Rowland*, 494 F.3d at 89 (citation and internal quotation marks omitted); *see*

---

[9] The court in *Ass'n of Jewish Camp Operators* did not consider whether Cuomo's issuance of the executive orders was part of the legislative scheme established by Executive Law § 29-a, but, instead, indicated more generally that the issuance of executive orders is not a legislative function. *Id.*, 470 F.Supp.3d at 213 ("The legislature plays no part in the drafting or passing [of] executive orders, that power is reserved for the executive branch."). However, as explained herein this Court believes that the issuance of executive orders *can* be part of a legislative process in particular circumstances.

*also, id*. at 89-90 ("[T]he District Court properly framed its broad inquiry as whether defendants' alleged acts were both (1) *substantively legislative, i.e., act that involve policy making*; and (2) procedurally legislative, i.e., passed by means of established legislative procedures.") (emphasis added).

Plaintiffs do not address this issue in their one-page discussion opposing Cuomo's claim to legislative immunity.[10]  In any event, the Court sees no legitimate issue of fact on this point.  Rather, the Court finds that the subject executive orders were substantively legislative since they clearly reflect policy decisions made to address the most significant public-health crisis in recent history.[11]  In particular, the executive orders ostensibly[12] attempted to implement a policy of arresting or slowing the spread of Covid-19 in the State of New York, so as to "flatten the curve" and avoid over-burdening the State's health care system.[13]

---

[10] ECF No. 31, mid-page 15 to mid-page 16.  In any event, Plaintiffs can hardly dispute that Cuomo's actions were substantively legislative, since they contend that Executive Law § 29-a delegated "wholesale legislative power" to Cuomo, Compl. ¶ 171, which Cuomo then exercised by issuing the challenged executive orders.

[11] Despite finding that Cuomo's legislative orders were not procedurally legislative, the *Ass'n of Jewish Camp Operators* decision indicated that Cuomo's Covid-19 executive orders were arguably substantively legislative. *Id*., 470 F.Supp.3d at 213 ("[I]t is arguable that, in this case, Defendant's executive orders are legislative in substance.  Here, Defendant's executive orders' implementation of various restrictions on businesses and citizens statewide reflects the discretionary policymaking decision of limiting and eradicating of the transmission of the Covid-19 virus.").

[12] As noted earlier, Plaintiffs allege that Cuomo was actually motivated by a nefarious desire to achieve a "bloodless coup."  However, Cuomo's subjective motivation is not relevant to determining whether he is entitled to legislative immunity. *See, Bogan v. Scott Harris*, 118 S.Ct. at 973 ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.").

[13] The record, including matters of which the Court may take judicial notice, indicates that the lockdown, including the closure of businesses deemed non-essential, was designed to reduce the amount of person-to-person contact that was fueling the spread of the illness, so as to "flatten the curve" and reduce the strain on the hospital system.  For example, on March 20, 2020, Cuomo issued the "New York State on Pause" Executive Order, which in pertinent part ordered the "100% closure of non-essential businesses statewide," with "exceptions made for essential services such as groceries and healthcare," and temporarily banned "all non-essential gatherings of individuals of any size for any reason." (https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order).  In that regard, Cuomo stated: "[E]verybody knows what we are dealing with. It is preventing an overload of the healthcare system.  . . .  The number one opportunity to make a difference here is to flatten the curve, flatten the increase in the number of cases like we've talked about, flatten the increase of the number of cases coming into the hospital system." *Id*.

In sum, the Court finds that Cuomo has shown that his challenged acts were both procedurally and substantively legislative, and that he is therefore entitled to absolute legislative immunity from Plaintiffs' claims for damages.   Consequently, the Court dismisses the remaining claims against Cuomo without addressing the merits of those claims.

CONCLUSION

The motion to dismiss by Cuomo (ECF No. 25) is granted and this action is dismissed.   The Clerk of the Court is directed to close this action.

SO ORDERED.

Dated: Rochester, New York
       December 16, 2021        ENTER:


                               CHARLES J. SIRAGUSA
                               United States District Judge